Evan J. Smith
BRODSKY & SMITH, LLC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JESSE SLOAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RENTECH NITROGEN PARTNERS, LP; MICHAEL S. BURKE; JOHN H. DIESCH; JAMES F. DIETZ; KEITH B. FORMAN; MICHAEL F. RAY; RENTECH NITROGEN GP, LLC; CVR PARTNERS, LP; LUX MERGER SUB 1, LLC; AND LUX MERGER SUB 2, LLC,<br><br>Defendants. | Case No. 2:15-cv-07818-GW-MRW<br><br>Assigned To The Honorable George H. Wu<br><br>CLASS ACTION<br><br>**DECLARATION OF EVAN J. SMITH IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      June 16, 2016<br>Time:      8:30 a.m.<br>Crtrm:      10<br>Before:      Hon. George H. Wu |

DECL. OF EVAN J. SMITH ISO PLF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM

I, Evan J. Smith, declare as follows:

1. I am a partner with the law firm of Brodsky & Smith, LLC, counsel for Plaintiff Jesse Sloan. I am fully familiar with all the facts and circumstances described herein.

2. This declaration is submitted in support of the Plaintiff's Motion for Preliminary Approval of Settlement and Memorandum of Points and Authorities in Support Thereof in the above-captioned action.

3. This is a class action against defendant Rentech Nitrogen Partners, LP ("Rentech Nitrogen" or the "Company"), Rentech Nitrogen GP, LLC ("Rentech Nitrogen GP"), Lux Merger Sub 1 LLC, Lux Merger Sub 2 LLC, CVR Partners, LP ("CVR Partners") and certain individual defendants. The action challenges the merger between Rentech Nitrogen and CVR Partners.

4. On August 9, 2015, Rentech Nitrogen announced that it had entered into a Merger Agreement, pursuant to which (1) Lux Merger Sub 1 LLC, a wholly owned subsidiary of CVR Partners will merge with and into Rentech Nitrogen GP, with Rentech Nitrogen GP continuing as the surviving entity as a wholly owned subsidiary of CVR Partners; and (2) Lux Merger Sub 2 LLC, a wholly owned subsidiary of CVR Partners, will merge with and into Rentech Nitrogen, with Rentech Nitrogen continuing as the surviving entity as a subsidiary of CVR Partners. Under the terms of the merger agreement, each holder of common units representing limited partner interests in Rentech Nitrogen eligible to receive consideration will receive 1.04 common units and $2.57 in cash, without interest, for each Rentech Nitrogen common unit (the "Merger").

5. Following the announcement of the Merger, on August 28, 2015, Mike Mustard filed a class action lawsuit in the Court of Chancery of the State of Delaware, entitled *Mustard v. Burke, et al.*, Case No. 11446-CB (the "Delaware Action"). In connection with its proposed meeting of unitholders, CVR Partners

filed a Form S-4 Registration Statement (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC") on September 17, 2015. On October 6, 2015, Jesse Sloan (the "California Plaintiff") filed a class action lawsuit in this Court, entitled *Sloan v. Rentech Nitrogen Partners, LP, et al.*, Case No. 2:15-cv-07818-GW-MRW (the "California Action," and, together with the Delaware Action, the "Actions").

6.     The Actions were filed on behalf of the public unitholders of Rentech Nitrogen against Rentech Nitrogen, Rentech Nitrogen GP, members of the Board of Directors (the "Board" or the "Individual Defendants"), CVR Partners, Lux Merger Sub 1 LLC, and Lux Merger 2 LLC, among others (collectively, "Defendants").   The Actions alleged, inter alia, that by reason of Defendants' conduct, the named plaintiffs and the class members had suffered and would suffer irreparable harm for which they had no adequate remedy at law, and requested that the Court grant appropriate relief for such alleged harm.

7.     On November 5, 2015, the Parties entered into a stipulated confidentiality agreement, which was entered by the Court on November 6, 2015. Pursuant to agreement reached between the Parties, Defendants produced, and the California Plaintiff reviewed, nearly 8,000 pages of confidential non-public documents.   The California Plaintiff also reviewed publicly available documents, including Rentech Nitrogen's SEC filings, trading history, and news reports.   On November 18, 2015, the California Plaintiff conducted the deposition of Dan Cohrs, Rentech Nitrogen's Chief Financial Officer.  On December 1, 2015, the California Plaintiff conducted the deposition of a representative of Morgan Stanley, financial adviser to Rentech Nitrogen in connection with the Merger.  The California Plaintiff also conferred with a financial expert engaged for the purposes of analyzing the Merger, the fairness of the Merger, and the adequacy of the disclosures made by

Defendants in connection with soliciting the votes of the Company's unitholders on the Merger.

8.     Plaintiffs' Counsel and counsel for Defendants in the Actions engaged in extensive arms' length negotiations concerning Plaintiffs' claims and the possible settlement of the Actions.  As a result of such negotiations, on February 1, 2016, the Parties hereto entered into a Memorandum of Understanding (the "MOU") containing the terms for the Parties' agreement-in-principle to resolve the Actions. The MOU was negotiated and executed before any negotiations regarding Plaintiffs' Counsel's anticipated application for fees and expenses.  Pursuant to the terms of the MOU, Defendants produced and the California Plaintiff reviewed additional confidential non-public documents relating to the Merger.  Among other things, the MOU set forth the Parties' agreement-in-principle that, in consideration for the full and final settlement and dismissal with prejudice of the Actions and the release of any and all Released Claims, Defendants would make additional disclosures (the "Disclosures") to the Registration Statement in a Form 8-K to be filed with the SEC as soon as practicable.  A copy of the 8-K showing the Disclosures to which the Parties agreed in settlement of the Actions is attached as Exhibit A to the Stipulation.  Plaintiffs' Counsel proposed, reviewed, commented on, and approved the Disclosures.  Defendants agree that the pendency of the Actions and the efforts of Plaintiffs' Counsel were the sole cause for the dissemination of the Disclosures.  Discovery is now complete, and Plaintiffs have confirmed the fairness, adequacy, and reasonableness of the Settlement.

9.     On February 15, 2016, at a special meeting of Rentech Nitrogen's unitholders, the unitholders voted to adopt the Merger.  The Merger was thereafter consummated on April 1, 2016.

10.     As a result of, among other things, the prosecution of the Action and discussions between and among the Parties, it is agreed that in consideration for the

full and final settlement and release of all Released Claims (as defined in the Stipulation) by Plaintiff and all members of the Class and the dismissal with prejudice of the Action, Defendants agreed to and did cause Rentech Nitrogen to file with the SEC on February 2, 2016 the Settlement 8-K, attached as Exhibit A to the Stipulation, containing the Supplemental Disclosures.   The Supplemental Disclosures provided information to Rentech Nitrogen shareholders in advance of the shareholder vote concerning, in part, the following:

- Information regarding the Background of the Transaction, including:
  - The negotiations of the terms of the Merger, including the reason for the Board's decision to accept the expense reimbursement and termination fee requested by CVR Partners.
- Information regarding the Financial Opinion of Morgan Stanley including:
  - With respect to Morgan Stanley's Discounted Cash Flow Analysis, an explanation as to how projected free cash flows were calculated, as well as how the cost of equity and cost of debt were calculated, and an explanation as to why Adjusted EBITDA (instead of EBITDA) was used to estimate equity values per CVR Partners common unit;
  - With respect to Morgan Stanley's Distribution Discount Analysis, inclusion of the cost of equity figures used for both Rentech Nitrogen and CVR Partners;
  - With respect to Morgan Stanley's Pro Forma Distributable Cash Per Unit Accretion/Dilution Analysis, the inclusion of the following chart:

| Year | Accretion / (Dilution) to Rentech Nitrogen DPU without reinvestment (%) | Accretion / (Dilution) to Rentech Nitrogen DPU with reinvestment (%) | Accretion / (Dilution) to CVR Partners DPU (%) |
|---|---|---|---|
| 2016 | 4.9 | 9.2 | 1.9 |
| 2017 | (23.7) | (21.0) | 34.6 |
| 2018 | (0.0) | 4.3 | 7.5 |
| 2019 | (23.2) | (20.8) | 28.7 |

and

o With respect to Morgan Stanley's Relative Contribution Analysis, the reason for using EBITDA with respect to Rentech Nitrogen but Adjusted EBITDA in the case of CVR Partners 8/4 Projections.

- Information regarding Management's Projections, including the following additions to the chart below (additions highlighted):

| | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **Daily production** | | | | | |
| UAN (short tons) | 775 | 753 | 848 | 789 | 850 |
| Ammonia (short tons) | 921 | 911 | 1,058 | 984 | 1,060 |
| Ammonia available for sale (tons) | 561 | 477 | 571 | 531 | 572 |
| **EBITDA (1)(2) ($ in millions)** | $109.6 | $ 88.1(2) | $111.2 | $ 92.0 | $123.6 |
| Cash available for distribution ($ in millions) | $ 73.2 | $ 50.3 | $ 79.2 | $ 53.8 | $ 91.2 |
| Cash available for distribution per unit | $ 1.88 | $ 1.29 | $ 2.03 | $ 1.38 | $ 2.34 |
| Operating income ($ in millions) | $ 91.3 | $ 70.3 | $ 93.1 | $ 73.5 | $104.7 |
| Depreciation ($ in millions) | $ 18.3 | $ 17.8 | $ 18.2 | $ 18.5 | $ 18.9 |
| Change in net working capital ($ in millions) | $(11.3) | $ (9.7) | $ (1.4) | $ 1.7 | $ (0.7) |
| Capital expenditures ($ in millions) | $(30.3) | $(25.7) | $(10.0) | $(16.0) | $(10.0) |
| Taxes | (0.1) | (0.1) | (0.1) | (0.1) | (0.2) |
| Turnaround expense ($ in millions) | — | $ 5.0 | — | $ 6.0 | — |
| **Key assumptions** | | | | | |
| *Price* | | | | | |
| UAN ($/short ton) | 255 | 246 | 255 | 257 | 273 |
| Ammonia ($/short ton) | 542 | 516 | 513 | 512 | 553 |

(1) EBITDA is defined as net income (loss) plus or less net interest expense, depreciation and amortization, income tax expenses or benefit, other income or expense and goodwill and asset impairments.

(2) Adjusted EBITDA is expected to be $103.3 million in 2016. Adjusted EBITDA is defined as EBITDA as further adjusted for turnaround expenses and sales volume impact due to turnaround. In 2016, the turnaround adjustment is $15.2 million. $5.0 million of this adjustment constitutes turnaround expenses, and the remaining $10.2 million represents sales volume impact due to turnaround. Every two to three years, Rentech Nitrogen closes its facilities for planned maintenance, which is referred to as a "turnaround," and suspends production during these turnaround periods. Sales volume impact due to turnaround represents the expected margins if production had occurred at normal rates during these planned downtime periods.

(3) Rentech Nitrogen calculates cash available for distribution as EBITDA plus non-cash compensation expense and distribution of cash reserves, less the sum of maintenance capital expenditures not funded by financing proceeds, net interest expense and other debt service and cash reserved for working capital purposes. Distribution of cash reserves represents a discretionary distribution to unitholders from cash on the balance sheet. Rentech Nitrogen has distributed cash reserves in the past when the cash balance is high, and there is sufficient cash on the balance sheet to fund near-term working capital, although Rentech Nitrogen has also distributed cash reserves under other circumstances. Cash is put into reserves, rather than distributed to unitholders, when management determines that additional cash may be necessary in the near term to fund working capital or maintenance capital expenditures.

11.   On May 16, the parties to the Actions entered into a Stipulation of Settlement ("Stipulation"), memorializing in full the terms of the Settlement.

12.   Plaintiff's Counsel believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Class. Plaintiffs' Counsel determined this only after conducting discovery, including reviewing a significant amount of documents, researching and analyzing the legal and factual issues involved,

conducting depositions, and engaging in multiple arm's-length negotiations with opposing counsel.

13.     Attached as Exhibit 1 is the May 16, 2016 Stipulation of Settlement and Exhibits thereto.

14.     Attached as Exhibit 2 is the Brodsky & Smith, LLC firm resume.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of May 2016, at Bala Cynwyd, Pennsylvania.


*s/ Evan J. Smith*
Evan J. Smith

EXHIBIT "1"

1  LATHAM & WATKINS LLP
 Brian T. Glennon (Bar No. 211012)
2   *brian.glennon@lw.com*
 355 South Grand Avenue
3  Los Angeles, California 90071
 Telephone: (213) 485-1234
4  Facsimile: (213) 891-8763

5  LATHAM & WATKINS LLP
 Kristin N. Murphy (Bar No. 268285)
6   *kristin.murphy@lw.com*
 650 Town Center Drive, 20th Floor
7  Costa Mesa, California 92626-1925
 Telephone: (714) 540-1235
8  Facsimile: (714) 755-8290

9  Counsel for Defendants Rentech Nitrogen Partners, LP;
 Michael S. Burke; John H. Diesch; James F. Dietz; Keith B.
10 Forman; Michael F. Ray; Rentech Nitrogen GP, LLC

11 [Additional Counsel Appear On Signature Pages]

12     **UNITED STATES DISTRICT COURT**

13     **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSE SLOAN, on behalf of himself and all others similarly situated, | Case No. 2:15-cv-07818-GW-MRW |
| Plaintiffs, | Assigned To The Honorable George H. Wu |
| v. | <u>CLASS ACTION</u> |
| RENTECH NITROGEN PARTNERS, LP; MICHAEL S. BURKE; JOHN H. DIESCH; JAMES F. DIETZ; KEITH B. FORMAN; MICHAEL F. RAY; RENTECH NITROGEN GP, LLC; CVR PARTNERS, LP; LUX MERGER SUB 1, LLC; AND LUX MERGER SUB 2, LLC, | **STIPULATION AND AGREEMENT OF COMPROMISE AND SETTLEMENT** |
| Defendants. | |

   This Stipulation and Agreement of Compromise and Settlement (the "Settlement Agreement" or the "Stipulation"), dated May 16, 2016, which is entered into between the Parties, as defined herein, by and through their counsel of record in the above-captioned action and in a related Delaware proceeding, states all of the terms of the settlement and resolution of this matter. The Stipulation is intended by the Parties to fully and finally compromise, resolve,

discharge and settle the Released Claims, as defined herein, subject to the approval of the United States District Court for the Central District of California (the "Court").

## A.   HISTORY OF THE LITIGATION

On August 9, 2015, Rentech Nitrogen Partners, LP ("Rentech Nitrogen" or the "Company") announced that it had entered into a Merger Agreement, pursuant to which (1) Lux Merger Sub 1 LLC, a wholly owned subsidiary of CVR Partners, LP ("CVR Partners") will merge with and into Rentech Nitrogen GP, LLC ("Rentech Nitrogen GP"), with Rentech Nitrogen GP continuing as the surviving entity as a wholly owned subsidiary of CVR Partners; and (2) Lux Merger Sub 2 LLC, a wholly owned subsidiary of CVR Partners, will merge with and into Rentech Nitrogen, with Rentech Nitrogen continuing as the surviving entity as a subsidiary of CVR Partners.  Under the terms of the merger agreement, each holder of common units representing limited partner interests in Rentech Nitrogen eligible to receive consideration will receive 1.04 common units and $2.57 in cash, without interest, for each Rentech Nitrogen common unit (the "Merger").

Following the announcement of the Merger, on August 28, 2015, Mike Mustard filed a class action lawsuit in the Court of Chancery of the State of Delaware, entitled *Mustard v. Burke, et al.,* Case No. 11446-CB (the "Delaware Action").  In connection with its proposed meeting of unitholders, CVR Partners filed a Form S-4 Registration Statement (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC") on September 17, 2015.  On October 6, 2015, Jesse Sloan (the "California Plaintiff") filed a class action lawsuit in this Court, entitled *Sloan v. Rentech Nitrogen Partners, LP, et al.*, Case No. 2:15-cv-07818-GW-MRW (the "California Action," and, together with the Delaware Action, the "Actions").

The Actions were filed on behalf of the public unitholders of Rentech Nitrogen against Rentech Nitrogen, Rentech Nitrogen GP, members of the Board of Directors (the "Board" or the "Individual Defendants"), CVR Partners, Lux Merger Sub 1 LLC, and Lux Merger 2 LLC, among others (collectively, "Defendants").  The Actions alleged, *inter alia*, that by reason of Defendants' conduct, the named plaintiffs and the class members had suffered and would suffer

irreparable harm for which they had no adequate remedy at law, and requested that the Court grant appropriate relief for such alleged harm.

On November 5, 2015, the Parties entered into a stipulated confidentiality agreement, which was entered by the Court on November 6, 2015.  Defendants produced, and the California Plaintiff (as defined below) reviewed, nearly 8,000 pages of confidential non-public documents. The California Plaintiff also reviewed thousands of pages of publicly available documents, including Rentech Nitrogen's SEC filings, trading history, and news reports.   On November 18, 2015, the California Plaintiff conducted the deposition of Dan Cohrs, Rentech Nitrogen's Chief Financial Officer.  On December 1, 2015, the California Plaintiff conducted the deposition of a representative of Morgan Stanley, financial adviser to Rentech Nitrogen in connection with the Merger.  The California Plaintiff also conferred with a financial expert engaged for the purposes of analyzing the Merger, the fairness of the Merger, and the adequacy of the disclosures made by Defendants in connection with soliciting the votes of the Company's unitholders on the Merger.

Plaintiffs' Counsel and counsel for Defendants in the Actions engaged in extensive arms' length negotiations concerning Plaintiffs' claims and the possible settlement of the Actions.  As a result of such negotiations, on February 1, 2016, the Parties hereto entered into a Memorandum of Understanding (the "MOU") containing the terms for the Parties' agreement-in-principle to resolve the Actions.  The MOU was negotiated and executed before any negotiations regarding Plaintiffs' Counsel's anticipated application for fees and expenses.  Pursuant to the terms of the MOU, Defendants produced and the California Plaintiff reviewed additional confidential non-public documents relating to the Merger.  Among other things, the MOU set forth the Parties' agreement-in-principle that, in consideration for the full and final settlement and dismissal with prejudice of the Actions and the release of any and all Released Claims, Defendants would make additional disclosures (the "Disclosures") to the Registration Statement in a Form 8-K to be filed with the SEC as soon as practicable.  A copy of the 8-K showing the Disclosures to which the Parties agreed in settlement of the Actions is attached hereto as **Exhibit A**.  Plaintiffs' Counsel proposed, reviewed, commented on, and approved the Disclosures.  Defendants agree that the

1   pendency of the Actions and the efforts of Plaintiffs' Counsel were the sole cause for the

2   dissemination of the Disclosures.  Discovery is now complete, and Plaintiffs have confirmed the

3   fairness, adequacy, and reasonableness of the Settlement.

4        On February 15, 2016, at a special meeting of Rentech Nitrogen's unitholders, the

5   unitholders voted to adopt the Merger.  The Merger was thereafter consummated on April 1,

6   2016.  Defendants have denied, and continue to deny, all allegations of wrongdoing, fault,

7   liability, or damage to any of the Plaintiffs or the Class Members (defined below), deny that they

8   engaged in any wrongdoing, deny that they committed, aided, or abetted any violation of law,

9   deny that they acted improperly in any way, believe that they acted properly at all times, and

10   maintain that they have committed no disclosure violations or any other breach of duty

11   whatsoever in connection with the Merger or any public disclosures.  Defendants wish to settle

12   solely because doing so will eliminate the uncertainty, distraction, burden, and expense of further

13   litigation.

14        Plaintiffs and their counsel believe that they brought their claims in good faith and

15   continue to believe that such claims had legal merit, but believe that the Disclosures allowed the

16   Company's unitholders to make fully informed decisions on whether to vote in favor of the

17   Merger.  Plaintiffs and their counsel also believe that their efforts in prosecuting the Actions

18   have resulted in significant relief for Rentech Nitrogen unitholders which, under the

19   circumstances, is fair, reasonable, adequate, and in the best interests of all Class Members.  The

20   entry by Plaintiffs into the MOU and this Stipulation is not an admission as to the lack of any

21   merit of any claims asserted in the Actions.

22        The Settlement of the Actions on the terms and conditions set forth herein will include,

23   but not be limited to, a release of all claims asserted in the Actions.

24

25        **NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND**

26   **AGREED**, by Plaintiffs, for themselves and on behalf of the Class, and the Defendants that,

27   subject to the approval of this Court under Rule 23(e) of the Federal Rules of Civil Procedure

28   and all other conditions set forth herein, for the good and valuable consideration set forth herein

1   and conferred on Plaintiffs and the Class (as those terms are defined below), the Actions shall be

2   finally and fully settled, compromised, and dismissed, on the merits and with prejudice, and that

3   the Released Claims shall be finally and fully compromised, settled, released, and dismissed with

4   prejudice as to the Released Parties, in the manner and upon the terms and conditions hereafter

5   set forth.

6   **B.**   **DEFINITIONS**

7   1.   The following capitalized terms, used in this Stipulation, shall have the meanings

8   specified below:

9

10   a.   "California Plaintiff's Counsel" means any counsel who has appeared for

11   Plaintiff Jesse Sloan in the California Action.

12   b.   "Class" means a non-opt out class for settlement purposes of all record

13   and beneficial owners of Rentech Nitrogen common units who owned or held Rentech Nitrogen

14   common units at any time during the period beginning on August 9, 2015 through April 1, 2016,

15   including any and all of their respective successors in interest, predecessors, representatives,

16   trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any

17   person or entity acting for or on behalf of, or claiming under, any of them, and each of them (the

18   "Class," to be composed of "Class Members").  Excluded from the Class are Defendants,

19   members of the immediate family of any Defendant, any entity in which a Defendant has or had

20   a controlling interest, and the legal representatives, heirs, successors, or assigns of any such

21   excluded person.

22   c.   "Class Member" means a member of the Class.

23   d.   "Court Approval" means the entry of the Judgment.

24   e.   "Defendants" means Rentech Nitrogen, CVR Partners, Lux Merger Sub 1

25   LLC, Lux Merger Sub 2 LLC, and the Individual Defendants.

26   f.   "Effective Date" means the first business day following the date the

27   Judgment becomes final and unappealable, whether by affirmance on or exhaustion of any

28

possible appeal or review, writ of certiorari, lapse of time, or otherwise.  The finality of the Judgment shall not be affected by any appeal or other proceeding regarding solely an application for attorneys' fees and expenses.

g.       "Individual Defendants" means Michael S. Burke, John H. Diesch, James F. Dietz, Keith B. Forman, and Michael F. Ray.

h.       "Judgment" means the Order and Final Judgment to be entered in the California Action substantially in the form attached as **Exhibit D** hereto.

i.       "Parties" means Plaintiffs and Defendants in the Actions.

j.       "Person" means any individual, corporation, partnership, limited liability company, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity.

k.       "Plaintiffs' Counsel" means any counsel who has appeared for any plaintiff in the Actions.

l.       "Released Claims" means all known and Unknown Claims (defined below) of every nature and description whatsoever against any of the Released Parties (defined below), that have been, could have been, or in the future can or might be asserted by Plaintiffs or any member of the Class in their capacity as unitholders, in any forum or proceeding, including class, derivative, individual, or other claims, whether state, federal, or foreign, common law, statutory, or regulatory, including, without limitation, claims under the federal securities or antitrust laws, arising out of, related to, or concerning (i) the Merger, the Merger Agreement, or any element, term, or condition of the Merger or the Merger Agreement, (ii) the Defendants' consideration, evaluation, or approval of the Merger, (iii) the disclosures or any public filings, periodic reports, press releases, proxy statements, or other statements issued, made available, filed, or otherwise disclosed or communicated related to the Merger, including any amendments thereto, (iv) any vote on the Merger, (v) the consideration offered, paid, or received by any Released Person or Class member in connection with the Merger, (vi) payments to the

1    Company's directors and executive officers in connection with the Merger, (vii) any alleged

2    aiding and abetting of any of the foregoing, and (viii) any fees, costs, or expenses incurred in

3    prosecuting, defending, or settling the Actions (other than any award pursuant to Paragraph 8

4    hereof); *provided*, *however*, that the Released Claims shall not include the right to enforce this

5    Stipulation or the Settlement.

6            m.    "Released Parties" means Defendants and their respective predecessors,

7    successors in interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors,

8    heirs, spouses, marital communities, assigns, or transferees and any person or entity acting for or

9    on behalf of any of them and each of them, and each of their predecessors, successors-in-interest,

10   parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital

11   communities, assigns, or transferees and any person or entity acting for or on behalf of any of

12   them and each of them (including, without limitation, any investment bankers, accountants,

13   insurers, reinsurers, or attorneys and any past, present, or future officers, directors, and

14   employees of any of them).

15           n.    "Settlement" means the settlement of the Actions between and among

16   Plaintiffs, on behalf of themselves and the Class, and the Defendants, as set forth in this

17   Stipulation.

18

19           o.    "Settlement Hearing" means the hearing to be held by the Court to

20   determine whether to certify the Class for settlement purposes, whether Plaintiffs and Plaintiffs'

21   Counsel have adequately represented the Class, whether the proposed Settlement should be

22   approved as fair, reasonable, and adequate, whether an Order and Judgment approving the

23   Settlement should be entered, and whether and in what amount any award of attorneys' fees and

24   expenses should be paid to Plaintiffs' Counsel.

25           p.    "Unknown Claims" means any claim that Plaintiffs or any other member

26   of the Class do not know or suspect exist in his, her, or its favor at the time of the release of the

27   Released Claims as against the Released Parties, including without limitation those which, if

28   known, might have affected the decision to enter into the Settlement.  With respect to any of the

Released Claims, the Parties stipulate and agree that upon final approval of the Settlement,

Plaintiffs shall expressly, and each member of the Class shall be deemed to have, and by

operation of the Order and Final Judgment shall have, expressly waived, relinquished, and

released any and all provisions, rights, and benefits conferred by or under Cal. Civ. Code §1542

or any law of the United States or any state of the United States or territory of the United States,

or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code §1542,

which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to

have acknowledged, that they may discover facts in addition to or different from those now

known or believed to be true with respect to the Released Claims, but that it is the intention of

Plaintiffs, and, by operation of law, the members of the Class, to completely, fully, finally, and

forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected,

which now exist, or heretofore existed, or may hereafter exist, and without regard to the

subsequent discovery of additional or different facts.  Plaintiffs acknowledge, and the members

of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of

"Unknown Claims" in the definition of "Released Claims" was separately bargained for and was

a material element of the Settlement and was relied upon by each and all of Defendants in

entering into the Settlement Agreement.

## C.   SETTLEMENT CONSIDERATION AND SCOPE OF THE SETTLEMENT

2.   The Disclosures having each been agreed to and provided in consideration for the

full and final settlement and dismissal with prejudice of the Actions and the release of any and

all Released Claims, no Released Party shall have any obligation to pay or bear any amounts,

expenses, costs, damages, or fees to or for the benefit of Plaintiffs or any Class Members in

connection with this Settlement except as provided for herein, including but not limited to

attorneys' fees and expenses for any counsel to any Class Member, or any costs of notice or settlement administration or otherwise; *provided*, *however*, that Rentech Nitrogen or its successor(s) in interest shall (i) be responsible for providing notice of the Settlement to the members of the Class and shall pay all reasonable, documented costs and expenses incurred in administering and providing notice of the Settlement to the members of the Class and (ii) be obligated to pay any attorneys' fees and expenses awarded by the Court to Plaintiffs' Counsel, as provided in Paragraph 8 hereof.  Defendants agree that the pendency of the Actions and the efforts of Plaintiffs' Counsel were the sole cause for the dissemination of the Disclosures.

3.      Plaintiff Mustard agrees to dismiss the Delaware Action with prejudice within five (5) days of the entry of the Order and Final Judgment.

4.      As of the Effective Date, Plaintiffs and all Class Members, and their respective heirs, executors, administrators, estates, predecessors in interest, predecessors, successors in interest, successors, and assigns, shall fully, finally, and forever release, settle, and discharge the Released Parties from and with respect to the Released Claims, and will be forever barred and enjoined from commencing, instituting, or prosecuting any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties (the "Release of Defendants"); provided, however, that the Release of Defendants shall not include Plaintiffs' and Plaintiffs' Counsel's rights to enforce the Settlement.

5.      As of the Effective Date, Defendants shall fully, finally, and forever release, settle, and discharge Plaintiffs, Class Members, and Plaintiffs' Counsel from any and all claims, allegations, complaints, petitions or sanctions, known or unknown, present or future, arising out of or relating to their investigation, initiation, filing, prosecution, litigation, settlement, or resolution of the Actions (the "Release of Plaintiffs"); provided, however, that the Release of Plaintiffs shall not include Defendants and their counsel's rights to enforce the Settlement.

**D.      <u>SUBMISSION OF THE SETTLEMENT TO THE COURT FOR APPROVAL</u>**

6.      As soon as practicable after this Settlement Agreement has been executed, the Parties shall apply to the Court for entry of an Order substantially in the form attached hereto as

**Exhibit B** (the "Scheduling Order"), providing for, among other things: (a) the mailing to the Class Members of the notice of pendency of class action, proposed Settlement, Settlement Hearing, and right to appear (the "Notice"), substantially in the form attached hereto as **Exhibit C**; (b) the scheduling of the Settlement Hearing to consider: (i) the proposed Settlement, (ii) the joint request of the parties that the Judgment be entered substantially in the form attached hereto as **Exhibit D**, (iii) certification of the Class, and (iv) California Plaintiff's application for attorneys' fees and expenses and any objections to the foregoing; and (c) the injunction against the prosecution of any of the Released Claims pending further order of the Court. At the Settlement Hearing, the Parties jointly shall request that the Judgment be entered substantially in the form attached hereto as **Exhibit D**.

## E.   CONDITIONS OF SETTLEMENT

7.   This Stipulation shall be subject to the following conditions and, except as provided in Paragraph 10, shall be cancelled and terminated unless:

a.   the Court enters the Scheduling Order substantially in the form attached hereto as **Exhibit B**;

b.   the Court enters the Judgment substantially in the form attached hereto as **Exhibit D**;

c.   the Effective Date shall have occurred; and

d.   the Delaware Action shall have been dismissed with prejudice.

## F.   ATTORNEYS' FEES AND EXPENSES

8.   California Plaintiff's Counsel intend to petition the Court for an award of attorneys' fees and expenses not to exceed $550,000 in fees and expenses (the "Fee and Expense Application"). Defendants reserve the right to object to the Fee and Expense Application. The Parties acknowledge that the MOU was negotiated and executed before any negotiations regarding the Fee and Expense Application. Plaintiffs' Counsel agree not to seek an award of fees or expenses in any other court in connection with the Actions and the Settlement. The Parties acknowledge and agree that any fees and expenses awarded by the Court to California Plaintiff's Counsel shall be paid to Brodsky & Smith's client trust account within ten (10)

business days after entry of an order awarding such fees and expenses.  Brodsky & Smith shall be responsible for distributing any fee award among Plaintiffs' Counsel and no recourse shall be had against any of the Defendants or their insurers in connection with such distributions.  Any such payment shall be made subject to the joint and several obligations of California Plaintiff's Counsel to make refunds or repayment to Rentech Nitrogen (or any successor entity) if any specified condition to the Settlement is not satisfied or, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Court's approval of the Settlement is reversed or the releases granted to the Released Persons are materially modified, any dismissal order is reversed, or the fee or costs award is reduced or reversed.  Each of Plaintiffs' Counsel's law firms, as a condition of receiving such fees and expenses, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and members are subject to the jurisdiction of the Court for the purpose of enforcing this provision.  The disposition of the Fee and Expense Application is not a condition of this Stipulation or the Settlement that such application be granted.  The Fee and Expense Application may be considered separately from the proposed Settlement.  Any disapproval or modification of the Fee and Expense Application by the Court or on appeal shall not affect or delay the enforceability of this Stipulation, provide any of the Parties with the right to terminate the Settlement, or affect or delay the binding effect or finality of the Judgment and the release of the Released Claims.  Final resolution of the Fee and Expense Application shall not be a condition to the dismissal of the Actions.  California Plaintiff's Counsel warrants that no portion of any such award of attorneys' fees or expenses shall be paid to any Plaintiff or any Class Member, except as approved by the Court.

## G.    STAY PENDING COURT APPROVAL

9.    Plaintiffs agree to continue the stays of proceedings in the Actions and not to initiate any other proceedings other than those incidental to the Settlement itself pending the occurrence of the Effective Date.  The Parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Class Member in, any other proceedings against any of the Released Parties that challenge the Settlement, or the

1   Merger, including any transactions contemplated thereby, or that otherwise involves, directly or

2   indirectly, a Released Claim.

3   **H.      EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION**

4   10.     If (a) the Court does not enter the Judgment in substantially the form of Exhibit D,

5   (b) the Court enters the Judgment but on or following appellate review the Judgment is modified

6   or reversed in any material respect, or (c) any of the other conditions of Paragraph 7 is not

7   satisfied, this Stipulation shall be cancelled and terminated unless counsel for each of the Parties,

8   within ten (10) business days from receipt of such ruling or event, agrees in writing with counsel

9   for the other Parties hereto to proceed with this Stipulation and Settlement, including only with

10   such modifications, if any, as to which all other Parties in their sole judgment and discretion may

11   agree.  For purposes of this Paragraph, an intent to proceed shall not be valid unless it is

12   expressed in a signed writing.  Neither a modification nor a reversal on appeal of the amount of

13   fees, costs, and expenses awarded by the Court to Plaintiffs' Counsel shall be deemed a material

14   modification of the Judgment or this Stipulation.

15   11.     If the Effective Date does not occur, or if this Stipulation is disapproved,

16   cancelled, or terminated pursuant to its terms, all of the Parties shall be deemed to have reverted

17   to their respective litigation status immediately prior to the execution of the MOU, and they shall

18   proceed in all respects as if the MOU and this Stipulation had not been executed and the related

19   orders had not been entered, and in that event all of their respective claims and defenses as to any

20   issue in the Actions shall be preserved without prejudice in any way, including Defendants' right

21   to oppose certification of a class in any future proceedings, and California Plaintiff's Counsel

22   reserves the right to apply to the Court for a mootness fee for the Disclosures.

23   **I.      MISCELLANEOUS PROVISIONS**

24   12.     All of the Exhibits referred to herein shall be incorporated by reference as though

25   fully set forth herein.

26   13.     This Stipulation may be amended, modified, or waived only by a written

27   instrument signed by counsel for all Parties hereto or their successors.

28   14.     The Parties represent and agree that the terms of the Settlement were negotiated at

1    arms' length and in good faith by the Parties, and reflect a settlement that was reached

2    voluntarily based upon adequate information and sufficient discovery and after consultation with

3    experienced legal counsel.

4         15.    This Stipulation and all negotiations, discussions, and proceedings in connection

5    with this Stipulation, shall not constitute any evidence, or an admission by any of the

6    Defendants, Plaintiffs, or Released Parties, that any acts of wrongdoing have been committed or

7    not been committed and shall not be deemed to create any inference that there is any liability or

8    lack of liability on the part of any of the Defendants or Released Parties.  This Stipulation and all

9    negotiations, discussions, and proceedings in connection with this Stipulation, shall not be

10   offered or received in evidence or used for any other purpose in this or any other proceeding in

11   any court, administrative agency, arbitration forum, or other tribunal other than as may be

12   necessary to enforce the terms of the Stipulation; ***provided***, ***however***, that the Stipulation and/or

13   Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be

14   necessary to argue that the Stipulation and/or Judgment has *res judicata*, collateral estoppel, or

15   other issue or claim preclusion effect or to otherwise consummate or enforce the Settlement or

16   Judgment; and the Disclosures may be used in any mootness fee application to the Court in the

17   event the Settlement does not receive final approval.

18        16.    To the extent permitted by law, all agreements made and orders entered during the

19   course of the Actions relating to the confidentiality of documents or information shall survive

20   this Stipulation.

21        17.    The waiver by any Party of any breach of this Stipulation by any other Party shall

22   not be deemed a waiver of that or any other prior or subsequent breach of any provision of this

23   Stipulation by any other Party.

24        18.    This Stipulation and the Exhibits constitute the entire agreement among the

25   Parties and supersede any prior agreements among the Parties with respect to the subject matter

26   hereof.  No representations, warranties, or inducements have been made to or relied upon by any

27   Party concerning this Stipulation or its Exhibits, other than the representations, warranties, and

28   covenants expressly set forth in such documents.

1    19.    This Stipulation may be executed in one or more counterparts, including by

2    facsimile and electronic mail, and, as executed, shall constitute one agreement.

3    20.    The Parties and their respective counsel of record agree that they will use their

4    best efforts to obtain all necessary approvals of the Court required by this Stipulation including,

5    but not limited to, using their best efforts to resolve any objections raised to the Settlement.

6    21.    Plaintiffs and Plaintiffs' Counsel represent and warrant that Plaintiffs are

7    members of the Class and that none of the Plaintiffs' claims or causes of action referred to in this

8    Stipulation has been assigned, encumbered, or otherwise transferred in any manner in whole or

9    in part.

10    22.    Each counsel signing this Stipulation represents and warrants that such counsel

11    has been duly empowered and authorized to sign this Stipulation on behalf of his or her clients.

12    23.    This Stipulation shall be binding upon and shall inure to the benefit of the Parties

13    and the Class (and, in the case of the releases, all Released Parties) and the respective legal

14    representatives, heirs, executors, administrators, transferees, successors, and assigns of all such

15    foregoing Persons and upon any corporation, partnership, or other entity into or with which any

16    party may merge, consolidate, or reorganize.

17    24.    The MOU, the Stipulation, the Settlement, and any and all disputes arising out of

18    or relating in any way to any of them, whether in contract, tort or otherwise, shall be governed by

19    and construed in accordance with the laws of the state of California, without regard to conflict of

20    laws principles.  Each of the Parties (a) irrevocably submits to the personal jurisdiction of this

21    Court as well as to the jurisdiction of all courts to which an appeal may be taken from such court,

22    in any suit, action, or proceeding arising out of or relating to this Stipulation or the Settlement,

23    (b) agrees that all claims in respect of such suit, action, or proceeding shall be brought, heard,

24    and determined exclusively in the Court (provided that, in the event that subject matter

25    jurisdiction is unavailable in the Court, then all such claims shall be brought, heard and

26    determined exclusively in any other state or federal court sitting in Los Angeles, California), and

27    (c) expressly waives, and agrees not to plead or to make any claim that any such action or

28    proceeding is subject (in whole or in part) to, a jury trial.

1

2      DATED: May 17, 2016                    BRODSKY & SMITH, LLC

3
                                              _____
4                                             By: Evan J. Smith
                                              9595 Wilshire Boulevard, Suite 900
5                                             Beverly Hills, CA 90212
                                              Tel:  (877) 534-2590
6                                             Fax: (310) 247-0160

7                                             *Counsel for Plaintiff Jesse Sloan*

8      DATED: May 17, 2016                    LEVI & KORSINSKY LLP

9
                                              _____
10                                            By: Shane T. Rowley
                                              30 Broad Street, 24th Floor
11                                            New York, NY 10004
                                              (212) 363-7500
12
                                              *Counsel for Plaintiff Mike Mustard*
13

14

15

16

17     DATED: May 17, 2016                    LATHAM & WATKINS LLP

18                                            /s/ Kristin N. Murphy
                                              By: Kristin N. Murphy
19                                            650 Town Center Drive, 20th Floor
                                              Telephone: (714) 540-1235
20                                            Facsimile: (714) 755-8290

21                                            *Counsel for Defendants Rentech Nitrogen
                                              Partners, LP; Michael S. Burke; John H.*
22                                            *Diesch; James F. Dietz; Keith B. Forman;*
                                              *Michael F. Ray; Rentech Nitrogen GP, LLC*
23

24     DATED: May 17, 2016                    PROSKAUER ROSE LLP

25
                                              /s/ Lary A. Rappaport
26                                            By: Lary Alan Rappaport
                                              Michael A. Firestein
27                                            2049 Century Park East
                                              Los Angeles, CA 90067-3206
28                                            Telephone: (310) 557-2900

1

Facsimile: (310) 557-2193

2

*Counsel for Defendants CVR Partners LP; Lux Merger Sub 1, LLC; and Lux Merger Sub 2, LLC*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: May 16, 2016

BRODSKY & SMITH, LLC

By: Evan J. Smith
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Tel: (877) 534-2590
Fax: (310) 247-0160

*Counsel for Plaintiff Jesse Sloan*

DATED: May 16, 2016

LEVI & KORSINSKY LLP

By: Shane T. Rowley
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

*Counsel for Plaintiff Mike Mustard*

DATED: May 16, 2016

LATHAM & WATKINS LLP

By: Kristin N. Murphy
650 Town Center Drive, 20th Floor
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

*Counsel for Defendants Rentech Nitrogen
Partners, LP; Michael S. Burke; John H.
Diesch; James F. Dietz; Keith B. Forman;
Michael F. Ray; Rentech Nitrogen GP, LLC*

DATED: May 16, 2016

PROSKAUER ROSE LLP

By: Lary Alan Rappaport
Michael A. Firestein
2049 Century Park East
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900

1

**SIGNATURE CERTIFICATION**

2      Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all the other signatories listed, and on

3  whose behalf the filing is submitted, concur in the filing's content and have authorized this

4  filing.

5

6

7  Dated:  May 17, 2016                    Respectfully submitted,

8

9                                           **LATHAM & WATKINS LLP**

10

11                                          By:    /s/ Kristin N. Murphy
                                                   Kristin N. Murphy
12                                                 Brian T. Glennon
                                                   *Attorneys for Defendants Rentech Nitrogen*
13                                                 *Partners, LP; Michael S. Burke; John H.*
                                                   *Diesch; James F. Dietz; Keith B. Forman;*
14                                                 *Michael F*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, DC 20549**

———————————

# FORM 8-K

———————————

**CURRENT REPORT**
**PURSUANT TO SECTION 13 OR 15(d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

**Date of Report (Date of earliest event reported): February 2, 2016 (February 1, 2016)**

———————————

# RENTECH NITROGEN PARTNERS, L.P.

**(Exact name of registrant as specified in its charter)**

———————————

| | | |
|---|---|---|
| **Delaware** | **001-35334** | **45-2714747** |
| **(State or Other Jurisdiction** | **(Commission** | **(IRS Employer** |
| **of Incorporation or Organization)** | **File Number)** | **Identification Number)** |

**10877 Wilshire Boulevard, 10th Floor**
**Los Angeles, California 90024**
**(Address of principal executive office) (Zip Code)**

**(310) 571-9800**
**(Registrants' telephone number, including area code)**

———————————

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☒ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01    Other Events.**

This Current Report on Form 8-K is being filed pursuant to a memorandum of understanding ("MOU") regarding the proposed settlement of certain litigation relating to the merger agreement, dated August 9, 2015, among Rentech Nitrogen Partners, L.P. ("Rentech Nitrogen") and CVR Partners, LP ("CVR Partners"). The merger agreement provides that, upon satisfaction of the terms and subject to the conditions set forth therein, (i) Lux Merger Sub 1 LLC, a wholly owned subsidiary of CVR Partners ("Merger Sub 1"), will merge with and into Rentech Nitrogen GP, LLC, the general partner of Rentech Nitrogen ("Rentech Nitrogen GP"), with Rentech Nitrogen GP continuing as the surviving entity as a wholly owned subsidiary of CVR Partners (the "Rentech Nitrogen GP merger"), and (ii) Lux Merger Sub 2 LLC, a wholly owned subsidiary of CVR Partners ("Merger Sub 2"), will merge with and into Rentech Nitrogen, with Rentech Nitrogen continuing as the surviving entity as a subsidiary of CVR Partners (the "Rentech Nitrogen merger" and together with the Rentech Nitrogen GP merger, the "mergers").

As previously disclosed on page 103 of the Definitive Proxy Statement on Schedule 14A filed with the Securities and Exchange Commission (the "SEC") by Rentech Nitrogen on January 14, 2016 (the "definitive proxy statement"), on August 29, 2015, Mike Mustard, a purported unitholder of Rentech Nitrogen, filed a class action complaint on behalf of the public unitholders of Rentech Nitrogen (the "Mustard plaintiffs") against Rentech Nitrogen, Rentech Nitrogen GP, Rentech Nitrogen Holdings, Inc., Rentech, Inc., CVR Partners, DSHC, LLC, Merger Sub 1 and Merger Sub 2, and the members of the board of directors of Rentech Nitrogen GP (the "Rentech Nitrogen Board") (collectively, the "Mustard defendants"), in the Court of Chancery of the State of Delaware (the "Mustard lawsuit").

Additionally, as previously disclosed on page 103 of the definitive proxy statement, on October 6, 2015, Jesse Sloan, a purported unitholder of Rentech Nitrogen, filed a class action complaint on behalf of the public unitholders of Rentech Nitrogen (the "Sloan plaintiffs" and together with the Mustard plaintiffs, the "plaintiffs") against Rentech Nitrogen, Rentech Nitrogen GP, CVR Partners, Merger Sub 1 and Merger Sub 2, and the members of the Rentech Nitrogen Board (the "Sloan defendants" and together with the Mustard defendants, the "defendants"), which is now pending in the United States District Court for the Central District of California (the "Sloan lawsuit" and together with the Mustard lawsuit, the "lawsuits").

A description of the lawsuits is included under the heading "Proposal 1: The Mergers—Litigation Relating to the Mergers" on page 103 of the definitive proxy statement.

On February 1, 2016, plaintiffs and defendants entered into a MOU providing for the proposed settlement of the lawsuits. While the defendants believe that no supplemental disclosure is required under applicable laws, in order to avoid the burden and expense of further litigation, they have agreed, pursuant to the terms of the MOU, to make certain supplemental disclosures related to the proposed mergers, all of which are set forth below. The MOU contemplates that the parties will enter into a stipulation of settlement. The stipulation of settlement will be subject to customary conditions, including court approval following notice to Rentech Nitrogen's unitholders. In the event that the parties enter into a stipulation of settlement, a hearing will be scheduled at which the United States District Court for the Central District of California (the "Court") will consider the fairness, reasonableness and adequacy of the proposed settlement. If the proposed settlement is finally approved by the Court, it will resolve and release all claims by unitholders of Rentech Nitrogen challenging any aspect of the proposed mergers, the merger agreement and any disclosure made in connection therewith, including in the definitive proxy statement, pursuant to terms that will be disclosed to such unitholders prior to final approval of the proposed settlement. In addition, in connection with the proposed settlement, the parties contemplate that plaintiffs' counsel will file a petition in the Court for an award of attorneys' fees and expenses to be paid by Rentech Nitrogen or its successor. The proposed settlement is also contingent upon, among other things, the mergers becoming effective under Delaware law. There can be no assurance that the Court will approve the proposed settlement contemplated by the MOU. In the event that the proposed settlement is not approved and such conditions are not satisfied, the defendants will continue to vigorously defend against the allegations in the lawsuits.

**SUPPLEMENT TO DEFINITIVE PROXY STATEMENT**

In connection with the proposed settlement of the lawsuits as set forth in this Current Report on Form 8-K, CVR Partners and Rentech Nitrogen agreed to make these supplemental disclosures to the definitive proxy statement. These disclosures should be read in connection with the definitive proxy statement and related documents incorporated by reference, which should be read in their entirety. To the extent that information herein differs from or updates information contained in the definitive proxy statement, the information contained herein supersedes the information contained in the definitive proxy statement. Defined terms used but not defined herein have the meanings set forth in the definitive proxy statement.

**The following supplemental disclosure replaces in its entirety the fifth paragraph on page 70 of the definitive proxy statement concerning the Background of the Transactions:**

On August 7, 2015, negotiations between the parties resumed. After further negotiations, the parties agreed that Rentech Nitrogen would be required to pay an expense reimbursement amount ($10 million) and, in the event that Rentech Nitrogen enters into a definitive agreement with respect to an alternative proposal or an alternative proposal is consummated within twelve months after such termination, the full termination fee ($31.2 million) in addition to the expense reimbursement amount. Rentech Nitrogen agreed to the expense reimbursement and termination fee requested by CVR Partners because the alternative structures proposed by CVR Partners were not acceptable to Rentech Nitrogen and CVR Partners was not willing to proceed with a transaction with a fiduciary out at any lesser amount, and Rentech Nitrogen had conducted an extensive, publicly-announced sale process which reduced the likelihood of an alternative proposal after entry into the Merger Agreement. The parties, with the assistance of Vinson & Elkins and Latham & Watkins, also negotiated the form of a separation agreement that would govern a spin-off of the Pasadena Facility, and provisions in the merger agreement relating to a qualified sale or spin-off of the Pasadena Facility.

**The following supplemental disclosure replaces in its entirety the disclosure in the last paragraph on page 79 and the first and second paragraphs on page 80 of the definitive proxy statement concerning the Discounted Cash Flow Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley calculated a range of implied valuations per common unit for Rentech Nitrogen and CVR Partners based on a discounted cash flow analysis, which is designed to provide an implied value of a common unit by calculating the present value of the estimated future cash flows and terminal value of a common unit. In preparing its analysis, Morgan Stanley assumed a valuation date for the Rentech Nitrogen merger of December 31, 2015 and relied upon the Management Projections, the Rentech Nitrogen Sensitivity Case and the CVR Partners Sensitivity Case, in each case for calendar years 2016 through 2019.

In arriving at the estimated equity values per Rentech Nitrogen common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of terminal EBITDA multiples ranging from 7.25x to 8.25x. The projected free cash flows (calculated as operating income, plus depreciation and amortization, less change in net working capital, capital expenditures and taxes) from calendar year 2016 through 2019 and the terminal value were then discounted to present values using a range of discount rates of 8.99% to 9.99%, which range of discount rates was calculated based on Rentech Nitrogen's estimated weighted average cost of capital, taking into account Rentech Nitrogen's cost of equity, estimated based upon the capital asset pricing model to be 11.2%, and cost of debt, estimated based on indicative new debt issue pricing for Rentech Nitrogen from Morgan Stanley's high yield desk as of August 2015 to be 7.5%. This analysis indicated an implied per unit valuation range for Rentech Nitrogen of $12.50 to $15.02, assuming the Rentech Nitrogen Projections, and an implied per unit valuation range of $12.14 to $14.60, assuming the Rentech Nitrogen Sensitivity Case.

In arriving at the estimated equity values per CVR Partners common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of terminal EBITDA multiples ranging from 8.50x to 9.50x. For the purposes of this analysis, Morgan Stanley used Adjusted EBITDA (instead of EBITDA) as provided in the CVR Partners 8/4 Projections to provide for a more representative comparison between CVR Partners and Rentech Nitrogen given the differences in their respective calculations of Adjusted

EBITDA. The projected free cash flows from calendar year 2016 through 2019 and the terminal value were then discounted to present values using a range of discount rates of 9.13% to 10.13%, which range of discount rates was calculated based on CVR Partners' estimated weighted average cost of capital, taking into account CVR Partners' cost of equity, estimated based upon the capital asset pricing model to be 10.2%,, and cost of debt, estimated based on indicative new debt issue pricing for CVR Partners from Morgan Stanley's high yield desk as of August 2015 to be 6.0%. This analysis indicated an implied per unit valuation range for CVR Partners of $11.44 to $12.87, assuming the CVR Partners 8/4 Projections, and an implied per unit valuation range of $11.00 to $12.38, assuming the CVR Partners Sensitivity Case.

**The following supplemental disclosure replaces in its entirety the disclosure in the fourth and fifth paragraphs on page 80 of the definitive proxy statement concerning the Distribution Discount Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

In arriving at the estimated equity values per Rentech Nitrogen common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of forward yields of 12.50% to 13.50% to Rentech Nitrogen management's estimated average 2016 through 2019 distributions per Rentech Nitrogen common unit. The distributions and the terminal value were then discounted to present values using a range of discount rates from 10.71% to 11.71%, based on Morgan Stanley's estimate of Rentech Nitrogen's then current cost of equity, estimated based upon the capital asset pricing model to be 11.2%. This analysis indicated an implied per unit valuation range for Rentech Nitrogen of $13.97 to $15.07, assuming the Rentech Nitrogen Projections, and an implied per unit valuation range of $13.57 to $14.64, assuming the Rentech Nitrogen Sensitivity Case.

In arriving at the estimated equity values per CVR Partners common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of forward yields of 9.50% to 10.50% to CVR Partners management's estimated average 2016 through 2019 distributions per CVR Partners common unit. The distributions and the terminal value were then discounted to present values using a range of discount rates from 9.72% to 10.72%, based on Morgan Stanley's estimate of CVR Partners' then current cost of equity, estimated based upon the capital asset pricing model to be 10.2%. This analysis indicated an implied per unit valuation range for CVR Partners of $11.77 to $12.97, assuming the CVR Partners 8/4 Projections, and an implied per unit valuation range of $11.32 to $12.48, assuming the CVR Partners Sensitivity Case.

**The following supplemental disclosure and table replaces in its entirety the last paragraph on page 81 of the definitive proxy statement (which ends on page 82) concerning the Pro Forma Distributable Cash Per Unit Accretion/Dilution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley presented the accretion/dilution analysis below for illustrative purposes only, and it did not factor into the firm's fairness opinion analysis. Using the Management Projections for 2016 through 2019, Morgan Stanley calculated the accretion/dilution of the estimated distributable cash to the existing unitholders of Rentech Nitrogen and CVR Partners, respectively, on a per unit basis. For each of the years ended December 31, 2016 through December 31, 2019, Morgan Stanley compared the distributable cash per unit ("DPU") of the combined entity on a pro forma basis (after accounting for the 1.04x exchange ratio offered to Rentech Nitrogen unitholders and with and without reinvestment of the cash consideration by Rentech Nitrogen unitholders) to the distributable cash per unit of Rentech Nitrogen and CVR Partners, respectively, as stand-alone entities. As shown in the table below, the analysis indicated that the Rentech Nitrogen merger would be (i) without reinvestment of the cash consideration, accretive to Rentech Nitrogen's distributable cash per unit in calendar year 2016 and dilutive in calendar years 2017 through 2019 and (ii) with reinvestment of the cash consideration at the spot rate of a 10-year U.S. Treasury security as of August 7, 2015, accretive to Rentech Nitrogen's distributable cash per unit in calendar years 2016 and 2018 and dilutive in calendar years 2017 and 2019. In addition, the analysis indicated that the Rentech Nitrogen merger would be accretive to CVR Partners' distributable cash per unit in each year for calendar years 2016 through 2019.

| Year | Accretion / (Dilution) to Rentech Nitrogen DPU without reinvestment (%) | Accretion / (Dilution) to Rentech Nitrogen DPU with reinvestment (%) | Accretion / (Dilution) to CVR Partners DPU (%) |
|---|---|---|---|
| 2016 | 4.9 | 9.2 | 1.9 |
| 2017 | (23.7) | (21.0) | 34.6 |
| 2018 | (0.0) | 4.3 | 7.5 |
| 2019 | (23.2) | (20.8) | 28.7 |

**The following supplemental disclosure replaces in its entirety the first full paragraph on page 82 concerning the Relative Contribution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley compared Rentech Nitrogen and CVR Partners' respective percentage ownership of the combined company, assuming an at-market transaction with no premium to reflect the relative contributions of each on a trading basis, to Rentech Nitrogen's and CVR Partners' respective percentage contribution to the combined company, excluding synergies, using EBITDA (or Adjusted EBITDA in the case of the CVR Partners 8/4 Projections to provide for a more representative comparison between CVR Partners and Rentech Nitrogen given the differences in their respective calculations of Adjusted EBITDA) and distributable cash flow based on the Management Projections and publicly available equity research analysts' estimates. The following table presents the results of this analysis:

**The following supplemental disclosure is a new paragraph that follows the table on page 82 concerning the Relative Contribution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

At the time Morgan Stanley rendered its fairness opinion to the Rentech Nitrogen Board, unitholders of Rentech Nitrogen were projected to own approximately 35.8% of the combined company under the terms of the Rentech Nitrogen merger.

**The following supplemental disclosure replaces in its entirety the second and third paragraphs, the table and accompanying footnotes on page 91 of the definitive proxy statement concerning Unaudited Prospective Financial and Operating Information of Rentech Nitrogen:**

Rentech Nitrogen has historically maintained an internal business plan that contains five years of projected financial and operating information. This plan is typically prepared annually, and the plan for the immediate fiscal year is updated periodically throughout the year as necessary for planning and budget purposes, and to reflect changes in circumstances, market conditions or expected production and sales. The longer-term business plan is generally updated only for third-party market pricing forecasts. In the course of due diligence, the management of Rentech Nitrogen updated this internal business plan (which excludes the operations of the Pasadena Facility) for the full fiscal years ending December 31, 2015, 2016, 2017, 2018 and 2019 based on actual results and market conditions.

The following table sets forth certain projected financial and operating information (and certain key assumptions) for Rentech Nitrogen (excluding the operations of the Pasadena Facility) for 2015 through 2019, which are the projections provided to the Rentech Nitrogen board of directors, CVR Partners and/or Morgan Stanley in connection with due diligence of the mergers. The data reflects certain UAN and ammonia pricing and production assumptions of Rentech Nitrogen management.

| | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **Daily production** | | | | | |
|   UAN (short tons) | 775 | 753 | 848 | 789 | 850 |
|   Ammonia (short tons) | 921 | 911 | 1,058 | 984 | 1,060 |
|   Ammonia available for sale (tons) | 561 | 477 | 571 | 531 | 572 |
| **EBITDA (1)(2)** ($ in millions) | $109.6 | $ 88.1(2) | $111.2 | $ 92.0 | $123.6 |
| **Cash available for distribution** ($ in millions) | $ 73.2 | $ 50.3 | $ 79.2 | $ 53.8 | $ 91.2 |
| **Cash available for distribution per unit** | $ 1.88 | $ 1.29 | $ 2.03 | $ 1.38 | $ 2.34 |
| **Operating income** ($ in millions) | $ 91.3 | $ 70.3 | $ 93.1 | $ 73.5 | $104.7 |
| **Depreciation** ($ in millions) | $ 18.3 | $ 17.8 | $ 18.2 | $ 18.5 | $ 18.9 |
| **Change in net working capital** ($ in millions) | $(11.3) | $ (9.7) | $ (1.4) | $ 1.7 | $ (0.7) |
| **Capital expenditures** ($ in millions) | $(30.3) | $(25.7) | $(10.0) | $(16.0) | $(10.0) |
| **Taxes** | (0.1) | (0.1) | (0.1) | (0.1) | (0.2) |
| **Turnaround expense** ($ in millions) | — | $ 5.0 | — | $ 6.0 | — |
| **Key assumptions** | | | | | |
| *Price* | | | | | |
|   UAN ($/short ton) | 255 | 246 | 255 | 257 | 273 |
|   Ammonia ($/short ton) | 542 | 516 | 513 | 512 | 553 |

_____

(1)    EBITDA is defined as net income (loss) plus or less net interest expense, depreciation and amortization, income tax expenses or benefit, other income or expense and goodwill and asset impairments.

(2)    Adjusted EBITDA is expected to be $103.3 million in 2016. Adjusted EBITDA is defined as EBITDA as further adjusted for turnaround expenses and sales volume impact due to turnaround. In 2016, the turnaround adjustment is $15.2 million. $5.0 million of this adjustment constitutes turnaround expenses, and the remaining $10.2 million represents sales volume impact due to turnaround. Every two to three years, Rentech Nitrogen closes its facilities for planned maintenance, which is referred to as a "turnaround," and suspends production during these turnaround periods. Sales volume impact due to turnaround represents the expected margins if production had occurred at normal rates during these planned downtime periods.

(3)    Rentech Nitrogen calculates cash available for distribution as EBITDA plus non-cash compensation expense and distribution of cash reserves, less the sum of maintenance capital expenditures not funded by financing proceeds, net interest expense and other debt service and cash reserved for working capital purposes. Distribution of cash reserves represents a discretionary distribution to unitholders from cash on the balance sheet. Rentech Nitrogen has distributed cash reserves in the past when the cash balance is high, and there is sufficient cash on the balance sheet to fund near-term working capital, although Rentech Nitrogen has also distributed cash reserves under other circumstances. Cash is put into reserves, rather than distributed to unitholders, when management determines that additional cash may be necessary in the near term to fund working capital or maintenance capital expenditures.

**Additional Information and Where to Find It**

In connection with the proposed mergers, CVR Partners has filed with the SEC a registration statement on Form S-4 that includes a definitive proxy statement of Rentech Nitrogen that also constitutes a prospectus of CVR Partners.

The definitive proxy statement/prospectus was mailed to unitholders of Rentech Nitrogen on or about January 15, 2016. Unitholders are urged to read the definitive proxy statement/prospectus and other relevant documents filed with the SEC, because they contain important information about the proposed transaction.

Unitholders may obtain free copies of these documents and other documents filed with the SEC at www.sec.gov. In addition, Rentech Nitrogen unitholders may obtain free copies of the documents filed with the SEC by contacting Julie Dawoodjee Cafarella, Vice President, Investor Relations and Communications at (310) 571-9800. CVR Partners unitholders may obtain free copies of the documents filed with the SEC by contacting CVR Partners' Investor Relations at (281) 207-3200.

Rentech Nitrogen, CVR Partners and their respective directors and executive officers and other members of management and employees may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information about directors and executive officers of Rentech Nitrogen is available in its Annual Report on Form 10-K for the year ended December 31, 2014 filed with the SEC on March 16, 2015. Information about CVR Partners' directors and executive officers is available in its Annual Report on Form 10-K for the year ended December 31, 2014 filed with the SEC on February 20, 2015. Other information regarding the participants in the proxy solicitation and a description of their direct and indirect interests, by security holdings or otherwise, is contained in the definitive proxy statement/prospectus and other relevant materials filed with the SEC regarding the mergers. Unitholders should read the definitive proxy statement/prospectus carefully before making any voting or investment decisions. You may obtain free copies of these documents from Rentech Nitrogen or CVR Partners using the sources indicated above.

**Cautionary Statement Regarding Forward-Looking Statements**

This document contains forward-looking statements. All statements other than historical facts, including, without limitation, statements regarding the expected benefits of the mergers to CVR Partners and Rentech Nitrogen and their unitholders, the anticipated completion of the mergers or the timing thereof, the expected financial position, business strategy, revenues, earnings, costs, capital expenditures and debt levels of the combined entity, and plans and objectives of management for future operations, are forward-looking statements. When used in this document, words such as we "may," "can," "expect," "intend," "plan," "estimate," "anticipate," "project," "believe," "will" or "should" or the negative thereof or variations thereon or similar terminology are generally intended to identify forward-looking statements. It is uncertain whether the events anticipated will transpire or, if they do occur, what impact they will have on the results of operations and financial condition of CVR Partners, Rentech Nitrogen or the combined entity. Such forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in, or implied by, such statements. In particular, statements, express or implied, concerning future actions, conditions or events, future operating results, the ability to generate sales, income or cash flow, to realize cost savings or other benefits associated with the mergers, to service debt or to make distributions are forward-looking statements. Forward-looking statements are not guarantees of performance. They involve risks, uncertainties and assumptions. Future actions, conditions or events and future results of operations may differ materially from those expressed in these forward-looking statements. Many of the factors that will determine actual results are beyond the ability of CVR Partners or Rentech Nitrogen to control or predict. For a list of specific factors that could cause actual results to differ from those in the forward-looking statements, see the disclosure under the heading "Cautionary Statement Regarding Forward-Looking Statements" on pages 52 through 54 in the definitive proxy statement/prospectus.

Unless expressly stated otherwise, forward-looking statements are based on the expectations and beliefs of the respective managements of CVR Partners and Rentech Nitrogen, based on information currently available, concerning future events affecting CVR Partners and Rentech Nitrogen. Although CVR Partners and Rentech Nitrogen believe that these forward-looking statements are based on reasonable assumptions, they are subject to uncertainties and factors related to CVR Partners' and Rentech Nitrogen's operations and business environments, all of which are difficult to predict and many of which are beyond CVR Partners' and Rentech Nitrogen's control.

Any or all of the forward-looking statements may turn out to be wrong. They can be affected by inaccurate assumptions or by known or unknown risks and uncertainties. The foregoing list of factors should not be construed to be exhaustive. Many factors, including the risks outlined under the caption "Risk Factors" contained in CVR Partners' and Rentech Nitrogen's Exchange Act reports incorporated into the definitive proxy statement/prospectus

by reference, will be important in determining future results, and actual future results may vary materially. There is no assurance that the actions, events or results of the forward-looking statements will occur, or, if any of them do, when they will occur or what effect they will have on CVR Partners' or Rentech Nitrogen's results of operations, financial condition, cash flows or distributions. In view of these uncertainties, CVR Partners and Rentech Nitrogen caution that investors should not place undue reliance on any forward-looking statements. Further, any forward-looking statement speaks only as of the date on which it is made, and, except as required by law, CVR Partners and Rentech Nitrogen undertake no obligation to update or revise any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of anticipated or unanticipated events or circumstances.

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

<div style="text-align:right">

**RENTECH NITROGEN PARTNERS, L.P.,**
a Delaware limited Partnership

By:  Rentech Nitrogen GP, LLC
Its:  General Partner

</div>

Date: February 2, 2016

<div style="text-align:right">

By:  /s/ Colin Morris
     Colin Morris
     Senior Vice President and General Counsel

</div>

EXHIBIT "B"

1   LATHAM & WATKINS LLP
        Brian T. Glennon (Bar No. 211012)
2       *brian.glennon@lw.com*
    355 South Grand Avenue
3   Los Angeles, California 90071
    Telephone:  (213) 485-1234
4   Facsimile:  (213) 891-8763

5   LATHAM & WATKINS LLP
        Kristin N. Murphy (Bar No. 268285)
6       *kristin.murphy@lw.com*
    650 Town Center Drive, 20th Floor
7   Costa Mesa, California 92626-1925
    Telephone:  (714) 540-1235
8   Facsimile: (714) 755-8290

9
    Counsel for Defendants Rentech Nitrogen Partners, LP;
10  Michael S. Burke; John H. Diesch; James F. Dietz; Keith B.
    Forman; Michael F. Ray; Rentech Nitrogen GP, LLC
11

12
                    **UNITED STATES DISTRICT COURT**
13
                   **CENTRAL DISTRICT OF CALIFORNIA**
14

15  JESSE SLOAN, on behalf of himself and all   | Case No. 2:15-cv-07818-GW-MRW
16  others similarly situated,
                                                 | Courtroom: 10
17                      Plaintiffs,
                                                 | <u>CLASS ACTION</u>
18         v.
19  RENTECH NITROGEN PARTNERS, LP;               | **SCHEDULING ORDER REGARDING**
    MICHAEL S. BURKE; JOHN H. DIESCH;            | **APPROVAL OF CLASS ACTION**
20  JAMES F. DIETZ; KEITH B. FORMAN;             | **SETTLEMENT AND CLASS**
    MICHAEL F. RAY; RENTECH NITROGEN             | **CERTIFICATION**
21  GP, LLC; CVR PARTNERS, LP; LUX
    MERGER SUB 1, LLC; AND LUX
22  MERGER SUB 2, LLC,

23                      Defendants.

24

25

26

27         WHEREAS, the parties to the above-captioned class action (the "Action") have agreed to

28  settle the Action; and

LATHAM&WATKINS LLP   SV\1722343.3
  ATTORNEYS AT LAW
   ORANGE COUNTY                                    1

1    WHEREAS, Plaintiffs have applied pursuant to Federal Rule of Civil Procedure

2    ("FRCP") 23 for an Order approving the proposed settlement of the Action and determining

3    certain matters in accordance with the Stipulation and Agreement of Compromise and

4    Settlement, entered into by the settling parties, dated May 16, 2016 (the "Stipulation" or

5    "Settlement Agreement"), and for the dismissal of the Action upon the terms and conditions set

6    forth in the Stipulation.[1]

7    NOW, after review and consideration of the Stipulation filed with the Court and the

8    exhibits annexed thereto, a copy of which is annexed hereto, and after due deliberation,

9    IT IS HEREBY ORDERED AND ADJUDGED this ____ day of _____, 2016, that:

10   1.    For purposes of settlement only, the Action shall be maintained as a class action

11   under FRCP on behalf of the following class (the "Class"):

12   All record and beneficial owners of Rentech Nitrogen Partners, LP ("Rentech Nitrogen")
     common units who owned or held Rentech Nitrogen common units at any time during the
13   period beginning on August 9, 2015 through April 1, 2016, including any and all of their
     respective successors in interest, predecessors, representatives, trustees, executors,
14   administrators, heirs, assigns, or transferees, immediate and remote, and any person or
     entity acting for or on behalf of, or claiming under, any of them, and each of them (the
15   "Class," to be composed of "Class Members").  Excluded from the Class are Defendants,
     members of the immediate family of any Defendant, any entity in which a Defendant has
16   or had a controlling interest, and the legal representatives, heirs, successors, or assigns of
     any such excluded person.  For purposes of the Settlement only, the Action shall be
17   certified as a non-opt-out class action pursuant to FRCP 23.

18   2.    A hearing (the "Settlement Hearing") will be held on _____ __, 2016, at

19   1:30 p.m., in the United States District Court for the Central District of California (the "Court"),

20   located at 312 North Spring Street, Los Angeles, California 90012, to: (a) consider whether the

21   Class should be certified permanently, for purposes of settlement, (b) determine whether to

22   certify plaintiff Jesse Sloan ("California Plaintiff") as Class Representative and Brodsky &

23   Smith, LLC ("California Plaintiff's Counsel") as Lead Counsel for the Class, (c) determine

24   whether the Court should approve the settlement as fair, reasonable and adequate and in the best

25   interests of the Class, (d) determine whether final judgment should be entered dismissing the

26   Action and the Released Claims as to the Released Parties with prejudice as against California

27
     _____
28   [1] Capitalized terms (other than proper nouns) that are not defined herein shall have the meanings
     set forth in the Stipulation.

1  Plaintiff and the Class, releasing the Released Claims, and barring and enjoining prosecution of

2  any and all Released Claims (as provided in the Stipulation) and (e) consider other matters,

3  including a request by California Plaintiff's Counsel for attorneys' fees and expenses, which

4  attorneys' fees and expenses (if and only if awarded by this Court) are to be paid solely by

5  Rentech Nitrogen and/or its successor(s)-in-interest and/or their respective insurer(s).  The Court

6  may adjourn and reconvene the Settlement Hearing without further notice to members of the

7  Class other than by oral announcement at the Settlement Hearing or any adjournment thereof.

8      3.      The Court may approve the settlement, according to the terms and conditions of

9  the Stipulation, as it may be modified by the parties thereto, with or without further notice to

10 Class Members.  Further, the Court may render its final judgment dismissing the Action against

11 the Defendants and the Released Claims with prejudice (as provided in the Stipulation),

12 approving releases by Plaintiff and the Class of claims against the Released Parties, and ordering

13 the payment of attorneys' fees and expenses, all without further notice.

14     4.      The Court approves, in form and substance, the Notice of Pendency of Class

15 Action, Proposed Settlement, Settlement Hearing and Right to Appear (the "Notice")

16 substantially in the form attached as **Exhibit C** to the Stipulation.  The Court finds the mailing of

17 the Notice in substantially the manner set forth in paragraph 5 of this Order constitutes the best

18 notice practicable under the circumstances to all persons entitled to such notice of the Settlement

19 Hearing and the proposed Settlement, and meets the requirements of FRCP 23 and of due

20 process.

21     5.      At least sixty (60) days before the Settlement Hearing, Rentech Nitrogen shall

22 cause the Notice to be mailed by United States mail, first class, postage pre-paid, to each person

23 who is shown on the records of Rentech Nitrogen, its successors-in-interest or their respective

24 transfer agents, to be a record owner of any common units of Rentech Nitrogen (the "Common

25 Units") at any time between August 9, 2015 through April 1, 2016, at his, her, or its last known

26 address appearing in the transfer records of unitholders maintained by or on behalf of Rentech

27 Nitrogen.  All record holders in the Class who were not also the beneficial owners of any

28 Common Units held by them of record shall be requested in the Notice to forward the Notice to

1    such beneficial owners of those Common Units.  Rentech Nitrogen shall use reasonable efforts to

2    give notice to such beneficial owners by causing additional copies of the Notice (a) to be made

3    available to any record holder who, prior to the Settlement Hearing, requests the same for

4    distribution to beneficial owners, or (b) to be mailed to beneficial owners whose names and

5    addresses Rentech Nitrogen received from record owners.

6          6.     At least ten (10) business days before the date of the Settlement Hearing, counsel

7    for Rentech Nitrogen shall file with the Court proof of mailing of the Notice.  Plaintiff shall file

8    and serve his opening brief in support of the Settlement and Plaintiff's Counsel's application for

9    attorneys' fees and expenses in accordance with the Federal Rules of Civil Procedure and shall

10   file these papers at least (16) court days prior to the Settlement Hearing.  Any opposition by

11   Defendants to Plaintiff's Counsel's application for attorneys' fees and expenses shall be filed at

12   least (8) court days prior to the Settlement Hearing.  If any shareholder objections to the

13   Settlement or the application for attorneys' fees are received or filed, Plaintiff and/or Defendants

14   may file and serve a brief response to those objections no later than five (5) court days prior to

15   the Settlement Hearing.

16         7.     At the Settlement Hearing, any member of the Class who desires to do so may

17   appear personally or by counsel, and show cause, if any, why the Class should not be

18   permanently certified, pursuant to FRCP 23; why the settlement of the Action in accordance with

19   and as set forth in the Stipulation should not be approved as fair, reasonable, and adequate and in

20   the best interests of the Class; why judgment should not be entered in accordance with and as set

21   forth in the Stipulation; or why the Court should not grant an award of reasonable attorneys' fees

22   and expenses to Plaintiff's Counsel for their services and actual expenses incurred in the Action;

23   provided, however, that unless the Court in its discretion otherwise directs, no Class Member, or

24   any other person, shall be entitled to contest the approval of the terms and conditions of the

25   Settlement or (if approved) the judgment to be entered thereon, or the allowance of fees and

26   expenses to Plaintiff's Counsel, and no papers, briefs, pleadings or other documents submitted by

27   any member of the Class or any other person (excluding a party to the Stipulation) shall be

28   received or considered, except by order of the Court for good cause shown, unless, no later than

fourteen (14) calendar days prior to the Settlement Hearing, such person files with the Clerk in the Court at 312 North Spring Street, Los Angeles, California 90012, and serves upon the attorneys listed below: (a) a written notice of intention to appear; (b) proof of membership in the Class; (c) a statement of objections to any matter before the Court; and (d) the grounds therefore or the reasons for wanting to appear and be heard, as well as all documents or writings the Court shall be asked to consider.  These writings must be served upon the following attorneys:

Brodsky & Smith, LLC      Proskauer Rose LLP
Evan J. Smith         Lary Alan Rappaport
9595 Wilshire Boulevard, Suite 900   2049 Century Park E #3200
Beverly Hills, CA 90212      Los Angeles, CA 90067

Latham & Watkins LLP
Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626

   8.  Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.  Class Members who do not object need not appear at the Settlement Hearing or take any other action to indicate their approval.

   9.  Institution or prosecution of any action or claim that is subject to the release, dismissal or bar provisions in the Stipulation is hereby enjoined pending further order of the Court.

   10.  All proceedings in the Action, other than proceedings as may be necessary to carry out the terms and conditions of the Stipulation, are hereby stayed and suspended until further order of this Court.

Dated: _____, 2016    BY THE COURT:

                   _____

                   HON. GEORGE H. WU

EXHIBIT "C"

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

—————————————————— x

JESSE SLOAN v. RENTECH NITROGEN   :
PARTNERS, LP; MICHAEL S. BURKE;   :
JOHN H. DIESCH; JAMES F. DIETZ; KEITH x
B. FORMAN; MICHAEL F. RAY; RENTECH          Lead Case No. 2:15-cv-07818-GW-MRW
NITROGEN GP, LLC; CVR PARTNERS, LP;
LUX MERGER SUB 1, LLC; AND LUX
MERGER SUB 2, LLC

—————————————————

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, SETTLEMENT HEARING AND RIGHT TO APPEAR

**TO:   ALL RECORD AND BENEFICIAL HOLDERS OF RENTECH NITROGEN PARTNERS, LP COMMON UNITS DURING THE PERIOD BEGINNING ON AUGUST 9, 2015 THROUGH APRIL 1, 2016, INCLUDING ANY AND ALL OF THEIR RESPECTIVE SUCCESSORS-IN-INTEREST, PREDECESSORS, REPRESENTATIVES, TRUSTEES, EXECUTORS, ADMINISTRATORS, HEIRS, ASSIGNS OR TRANSFEREES, IMMEDIATE AND REMOTE, AND ANY PERSON OR ENTITY ACTING FOR OR ON BEHALF OF, OR CLAIMING UNDER, ANY OF THEM, AND EACH OF THEM.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE SETTLED CLAIMS (DEFINED HEREIN).**

**IF YOU HELD RENTECH NITROGEN, LP COMMON UNITS FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

## I.   PURPOSE OF NOTICE

Pursuant to an Order of the United States District Court for the Central District of California (the "Court") dated _____ __, 2016, and further pursuant to Federal Rule of Civil Procedure ("FRCP") 23, this Notice is to inform you of (i) the Court's determination to provisionally certify the above-captioned action ("Action") pursuant to FRCP 23, (ii) the proposed settlement of the Action (the "Settlement") as provided for in a Stipulation and Agreement of Compromise and Settlement (the "Stipulation") dated May 16, 2016, and (iii) your right to participate in a hearing to be held on _____ __, 2016 at ____.m., before the Court at 312 North Spring Street, Los Angeles, California 90012 (the "Settlement Hearing") to determine whether the Court should (i) finally certify the Action pursuant to FRCP 23, (ii) certify

plaintiff Jesse Sloan in the Action as Class Representative, (iii) approve the Settlement as fair, reasonable, adequate and in the best interests of the Class, and (iv) consider the attorneys' fees and expenses to be paid to California Plaintiff's Counsel.

This Notice describes the rights you may have in the Action and pursuant to the Stipulation and what steps you may take, but are not required to take, in relation to the Settlement.

If the Court approves the Settlement, the parties will ask the Court at the Settlement Hearing to enter an Order and Final Judgment dismissing the Action with prejudice in accordance with the terms of the Stipulation.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II.    BACKGROUND

On August 9, 2015, Rentech Nitrogen Partners, LP ("Rentech Nitrogen" or the "Company") announced that it had entered into a Merger Agreement, pursuant to which (1) Lux Merger Sub 1 LLC, a wholly owned subsidiary of CVR Partners, LP ("CVR Partners") will merge with and into Rentech Nitrogen GP, LLC ("Rentech Nitrogen GP"), with Rentech Nitrogen GP continuing as the surviving entity as a wholly owned subsidiary of CVR Partners; and (2) Lux Merger Sub 2 LLC, a wholly owned subsidiary of CVR Partners, will merge with and into Rentech Nitrogen, with Rentech Nitrogen continuing as the surviving entity as a subsidiary of CVR Partners.  In connection with the Merger, CVR Partners filed a Form S-4 Registration Statement with the U.S. Securities and Exchange Commission (the "SEC") on September 17, 2015.  Following the announcement of the Merger, on August 28, 2015, Mike Mustard (the "Delaware Plaintiff," and together with California Plaintiff, the "Plaintiffs") filed a class action lawsuit in the Court of Chancery of the State of Delaware, entitled *Mustard v. Burke, et al.,* Case No. 11446-CB (the "Delaware Action").  On October 6, 2015, Jesse Sloan filed a class action lawsuit in the Court, entitled *Sloan v. Rentech Nitrogen Partners, LP, et al.*, Case No. 2:15-cv-07818-GW-MRW (the "California Action," and, together with the Delaware Action, the "Actions").

During discovery in the California Action, Defendants produced and the California Plaintiff reviewed nearly 8,000 pages of confidential non-public documents, including presentations to the board of directors by its financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), board presentations prepared by Rentech Nitrogen's management in connection with the consideration of strategic alternatives during the relevant time period, and Morgan Stanley's retainer agreement; in addition to reviewing thousands of pages of publicly available documents, including Rentech Nitrogen's SEC filings, trading history, and news reports.  On November 18, 2015, the California Plaintiff took the deposition of Rentech Nitrogen's Chief Financial Officer, Dan Cohrs.  On December 1, 2015, the California Plaintiff took the deposition of a representative of Morgan Stanley, financial adviser to Rentech Nitrogen in connection with the Merger.  The

California Plaintiff also conferred with a financial expert engaged for the purposes of analyzing the Merger, the fairness of the Merger, and the adequacy of the disclosures made by Defendants in connection with soliciting the votes of the Company's unitholders on the Merger.

Plaintiffs' Counsel and counsel for Defendants in the Actions engaged in extensive arm's length negotiations concerning Plaintiffs' demands for further disclosure to Rentech Nitrogen unitholders and a possible settlement of the Actions.  As a result of such negotiations, on February 1, 2016, the Parties hereto entered into a Memorandum of Understanding (the "MOU") containing the terms for the Parties' agreement-in-principle to resolve the Actions.  Among other things, the MOU sets forth the Parties' agreement-in-principle that, in consideration for the full and final settlement and dismissal with prejudice of the Actions and the release of any and all Released Claims, Defendants would make additional disclosures (the "Supplemental Disclosures") in an 8-K to be filed with the SEC as soon as practicable.  A copy of the 8-K showing the Supplemental Disclosures to which the Parties agreed in settlement of the Actions is attached hereto as **Exhibit A**.  Plaintiffs' Counsel proposed, reviewed, commented on and approved the Disclosures.

On February 15, 2016, at a special meeting of Rentech Nitrogen's common unitholders, the common unitholders voted to adopt the Merger, which was thereafter consummated on April 1, 2016.

Discovery is now complete, and Plaintiffs have confirmed the fairness, adequacy, and reasonableness of the Settlement.

Defendants have denied, and continue to deny, all allegations of wrongdoing, fault, liability, or damage to any of the respective plaintiffs in the Actions or the Class (defined below), deny that they engaged in any wrongdoing, deny that they committed, aided, or abetted any violation of law, deny that they acted improperly in any way, believe that they acted properly at all times, and maintain that they have committed no disclosure violations or any other breach of duty whatsoever in connection with the Merger or any public disclosures, but wish to settle solely because it will eliminate the uncertainty, distraction, burden, and expense of further litigation.

Plaintiffs' Counsel believe that they brought their claims in good faith and continue to believe that such claims had legal merit, but believe that the Disclosures allowed the Company's shareholders to make fully informed decisions with regard to the Merger.  Plaintiffs' Counsel also believe that their efforts in prosecuting the Actions have resulted in significant relief for Rentech Nitrogen's common unitholders which, under the circumstances, is fair, reasonable, adequate, and in the best interests of all members of the Class.  The entry by Plaintiffs' Counsel into the MOU and the Stipulation is not an admission as to the lack of any merit of any claims asserted in the Actions.

On May 16, 2016, the Parties signed the Stipulation.

## III.    REASONS FOR THE SETTLEMENT

Plaintiffs, through their Counsel, conducted an investigation of the claims and allegations asserted in the complaints filed in the Actions (together, the "Complaints"), as well as the underlying events relating to the Merger.  In connection with their investigation, California Plaintiff's Counsel has reviewed confidential documents produced by Defendants, as well as publicly-available documents, filed with the SEC in connection with the Merger.  California Plaintiff's Counsel also retained a financial expert in order to assist in the review and analysis of the financial documents produced.   California Plaintiff's Counsel has also conducted the depositions of Rentech Nitrogen's CFO, Dan Cohrs, and a representative of Morgan Stanley and performed additional factual and legal research concerning the validity of their claims.  While the Plaintiffs contend that the claims that they have asserted had merit when filed, they also believe that the Settlement provides substantial benefits for the Class (as hereinafter defined). Plaintiffs and their Counsel believe that any claims relating to disclosure issues would be and have been best remedied by the Supplemental Disclosures that were contained in the Form 8-K filed by Rentech Nitrogen with the SEC on February 2, 2016 (the "8-K").  In addition to the substantial benefits provided by the Settlement to the Class, Plaintiffs and their Counsel have considered:  (1) the attendant risks of continued litigation and the uncertainty of the outcome of the Actions; (2) the probability of success on the merits and the allegations contained in the Actions; (3) the desirability of permitting the Settlement to be consummated according to its terms; and (4) the conclusion of the Actions by the Settlement on terms and conditions that Plaintiffs and their Counsel believe to be fair, reasonable, and adequate and that it is in the best interests of the Plaintiffs and the members of the Class to settle the Actions, as set forth below.

Defendants have vigorously denied, and continue to deny, (1) any wrongdoing or liability with respect to all claims, events, and transactions complained of in the Actions; (2) that they engaged in any wrongdoing; (3) that they committed any violation of law; (4) that they breached or aided and abetted any breach of any fiduciary or disclosure duties; (5) that they acted improperly in any way; and (6) any liability of any kind to Plaintiffs in the Actions or to the Class.  Notwithstanding their denial of liability, Defendants consider it desirable that the Actions be settled and dismissed on the merits and with prejudice and without costs to any party (except as set forth below) in order to: (1) avoid the distraction, burden, and expense of further litigation; (2) dispose of potentially burdensome and protracted litigation; and (3) finally put to rest and terminate the claims asserted in the Actions.

## IV.    THE SETTLEMENT

In consideration for the settlement and dismissal with prejudice of the Actions, and the releases provided herein, Defendants included the Supplemental Disclosures in the 8-K filed by Rentech Nitrogen with the SEC on February 2, 2016 and agree that the Plaintiffs and the efforts of Plaintiffs' Counsel, were the sole cause for the Supplemental Disclosures filed in the 8-K.

## V.    CLASS ACTION DETERMINATION

The Court has ordered that, for settlement purposes only, the Action shall be maintained as a class action pursuant to FRCP 23 on behalf of a non-opt out class consisting of all record and beneficial holders of Rentech Nitrogen common units who owned or held shares of Rentech

Nitrogen common units at any time during the period beginning on August 9, 2015, through April 1, 2016 the date of the consummation of the Merger, including any and all of their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, but excluding Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.

Inquiries or comments about the Settlement may be directed to the attention of Counsel for Plaintiffs as follows:

Brodsky & Smith, LLC
Evan J. Smith
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212

## VI.   SETTLEMENT HEARING

The Court has scheduled a Settlement Hearing which will be held on _____ __, 2016 at _____.m., in the Court at 312 North Spring Street, Los Angeles, California 90012 to:

(a)   determine whether the provisional class action certification in the Court's Scheduling Order should be made final;

(b)   determine whether the Settlement should be approved by the Court as fair, reasonable, adequate and in the best interests of the Class;

(c)   determine whether an Order and Final Judgment should be entered pursuant to the Stipulation;

(d)   consider an award of attorneys' fees and expenses to California Plaintiff's Counsel;

(e)   rule on such other matters as the Court may deem appropriate.

The Court has reserved the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration an award of attorneys' fees, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

The Court has also reserved the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to the Class.

## VII.   RIGHT TO APPEAR AND OBJECT

Any member of the Class who objects to the Settlement, the Order and Final Judgment to be entered in the Actions, and/or California Plaintiff's Counsel's attorneys' fees, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard and no papers, briefs, pleadings or

other documents submitted by any person shall be considered by the Court unless not later than ten (10) business days prior to the Settlement Hearing such person files with the Court and serves upon counsel listed below: (a) a written notice of intention to appear; (b) proof of membership in the Class; (c) a statement of such person's objections to any matters before the Court; and (d) the grounds for such objections and the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider. Such filings shall be served upon the following counsel:

Brodsky & Smith, LLC
Evan J. Smith
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212

Proskauer Rose LLP
Lary Alan Rappaport
2049 Century Park E #3200
Los Angeles, CA 90067

Latham & Watkins LLP
Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626

Unless the Court otherwise directs, no person shall be entitled to object to the approval of the Settlement, any judgment entered thereon, the adequacy of the representation of the Class by the Plaintiffs and their counsel, any award of attorneys' fees, or otherwise be heard, except by serving and filing a written objection and supporting papers and documents as prescribed above. Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.

## VIII.   ORDER AND FINAL JUDGMENT OF THE COURT

If the Court determines that the Settlement, as provided for in the Stipulation is fair, reasonable, and adequate and in the best interests of the Class, the parties shall jointly request that the Court enter an Order and Final Judgment.  The Order and Final Judgment shall, among other things:

(a)   make final the Court's previous determination to certify provisionally the Action as a class action pursuant to FRCP 23;

(b)   determine that the requirements of the Court Rules and due process have been satisfied in connection with the Notice;

(c)   approve the Settlement as fair, reasonable, and adequate and in the best interests of the Class;

(d)   authorize and direct the performance of the Settlement in accordance with its terms and conditions and reserve jurisdiction to supervise the consummation of the Settlement;

(e)   dismiss the Action with prejudice, on the merits, without costs except as provided in the Order and Final Judgment, as against any and all Defendants, and release the Defendants or any other Released Persons (defined below) from the Settled Claims (defined below); and

(f)     award attorneys' fees and expenses to California Plaintiff's Counsel in an amount not to exceed $_____.

## IX.   RELEASES

Under the terms of the Settlement, "Released Claims" means all known and Unknown Claims (defined below) of every nature and description whatsoever against any of the Released Parties (defined below), that have been, could have been, or in the future can or might be asserted by Plaintiffs or any member of the Class in their capacity as unitholders, in any forum or proceeding, including class, derivative, individual, or other claims, whether state, federal, or foreign, common law, statutory, or regulatory, including, without limitation, claims under the federal securities or antitrust laws, arising out of, related to, or concerning (i) the Merger, the Merger Agreement, or any element, term, or condition of the Merger or the Merger Agreement, (ii) the Defendants' consideration, evaluation, or approval of the Merger, (iii) the disclosures or any public filings, periodic reports, press releases, proxy statements, or other statements issued, made available, filed, or otherwise disclosed or communicated related to the Merger, including any amendments thereto, (iv) any vote on the Merger, (v) the consideration offered, paid, or received by any Released Person or Class member in connection with the Merger, (vi) payments to the Company's directors and executive officers in connection with the Merger, (vii) any alleged aiding and abetting of any of the foregoing, and (viii) any fees, costs, or expenses incurred in prosecuting, defending, or settling the Actions (other than any award pursuant to Paragraph 8 hereof); *provided*, *however*, that the Released Claims shall not include the right to enforce the Stipulation or the Settlement.

"Released Parties" means Defendants and their respective predecessors, successors in interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns, or transferees and any person or entity acting for or on behalf of any of them and each of them, and each of their predecessors, successors-in-interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns, or transferees and any person or entity acting for or on behalf of any of them and each of them (including, without limitation, any investment bankers, accountants, insurers, reinsurers, or attorneys and any past, present, or future officers, directors, and employees of any of them).

The release contemplated by this Settlement extends to claims that the Plaintiffs and the Class (the "Releasing Parties"), do not know or suspect exist in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement.  With respect to any of the Released Claims, the Parties stipulate and agree that upon Final Approval of the Settlement, Plaintiffs shall expressly and each member of the Class shall be deemed to have, and by operation of the final order and judgment by the Court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code §1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.  Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

Defendants also have agreed to release Plaintiffs, members of the Class and their counsel, from all claims arising out of the instituting, prosecution, settlement or resolution of the Actions, provided however, that the Defendants and Released Persons shall retain the right to enforce the terms of the Settlement.

X.   **CALIFORNIA PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND EXPENSES**

Defendants agree that as a result of the Supplemental Disclosures that formed the basis for the Settlement and that were contained in the Form 8-K filed by Rentech Nitrogen with the SEC on February 2, 2016 (the "8-K") and the other terms and conditions of the Settlement, in which California Plaintiff's Counsel were the sole contributing factor, Rentech Nitrogen's public shareholders received valuable benefits.  California Plaintiff's Counsel intends to petition the Court for an award of attorneys' fees and expenses incurred in connection with the Actions not to exceed $_____ in fees and expenses (the "Fee and Expense Application").  Defendants reserve the right to object to the Fee and Expense Application.

The Parties acknowledge and agree that any fees and expenses awarded by the Court to California Plaintiff's Counsel shall be paid to Brodsky & Smith, LLC, solely by Rentech Nitrogen, its successor(s) in interest, or their respective insurer(s) within ten (10) business days of the entry of an order awarding such fees and expenses.  Any such payment shall be made subject to the joint and several obligations of California Plaintiff's Counsel to make refunds or repayment to Rentech Nitrogen (or any successor entity) if any specified condition to the Settlement is not satisfied or, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Court's approval of the Settlement is reversed or the releases granted to the Released Persons are materially modified, any dismissal order is reversed, or the fee or costs award is reduced or reversed.  California Plaintiff's Counsel, as a condition of receiving such fees and expenses, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and members are subject to the

jurisdiction of the Court for the purpose of enforcing this provision. The disposition of the Fee and Expense Application is not a material term of the Stipulation, and it is not a condition of the Stipulation or the Settlement that such application be granted.  The Fee and Expense Application may be considered separately from the proposed Settlement.  Any disapproval or modification of the Fee and Expense Application by the Court or on appeal shall not affect or delay the enforceability of the Stipulation, provide any of the Parties with the right to terminate the Settlement, or affect or delay the binding effect or finality of the Judgment and the release of the Released Claims.  Final resolution of the Fee and Expense Application shall not be a condition to the dismissal of the Action.  Except for the costs of providing and administering this notice, Defendants shall not be required to bear other expenses, costs, damages, or fees alleged or incurred by Plaintiffs, by any member of the Class, or by any of their attorneys, experts, advisors, agents, or representatives unless ordered by the Court.

## XI.   NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and/or other persons or entities who held shares of the common units of Rentech Nitrogen at any time during the period from August 9, 2015, through April 1, 2016, the date of the consummation of the Merger, for the benefit of others are directed promptly to send this Notice to all of their respective beneficial owners.  If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such copies may be made to:

<div style="text-align:center">

Rentech Securities Litigation

c/o _____

_____

_____

_____

</div>

## XII.   SCOPE OF THIS NOTICE

This Notice is not all-inclusive.  The references in this Notice to the pleadings in the Action, the Stipulation and other papers and proceedings are only summaries and do not purport to be comprehensive.  For the full details of the Action, the claims and defenses which have been asserted by the parties and the terms and conditions of the Settlement, including a complete copy of the Stipulation, members of the Class are referred to the Court files in the Action.  You or your attorney may examine the Court files during regular business hours of each business day at the office of the Register in the Court at 312 North Spring Street, Los Angeles, California 90012.

**DO NOT CALL THE COURT.**

# Exhibit A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, DC 20549**

---

# FORM 8-K

---

**CURRENT REPORT**
**PURSUANT TO SECTION 13 OR 15(d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

**Date of Report (Date of earliest event reported): February 2, 2016 (February 1, 2016)**

---

# RENTECH NITROGEN PARTNERS, L.P.

**(Exact name of registrant as specified in its charter)**

---

| | | |
|---|---|---|
| **Delaware** | **001-35334** | **45-2714747** |
| (State or Other Jurisdiction of Incorporation or Organization) | (Commission File Number) | (IRS Employer Identification Number) |

**10877 Wilshire Boulevard, 10th Floor**
**Los Angeles, California 90024**
**(Address of principal executive office) (Zip Code)**

**(310) 571-9800**
**(Registrants' telephone number, including area code)**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☒ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01     Other Events.**

This Current Report on Form 8-K is being filed pursuant to a memorandum of understanding ("MOU") regarding the proposed settlement of certain litigation relating to the merger agreement, dated August 9, 2015, among Rentech Nitrogen Partners, L.P. ("Rentech Nitrogen") and CVR Partners, LP ("CVR Partners"). The merger agreement provides that, upon satisfaction of the terms and subject to the conditions set forth therein, (i) Lux Merger Sub 1 LLC, a wholly owned subsidiary of CVR Partners ("Merger Sub 1"), will merge with and into Rentech Nitrogen GP, LLC, the general partner of Rentech Nitrogen ("Rentech Nitrogen GP"), with Rentech Nitrogen GP continuing as the surviving entity as a wholly owned subsidiary of CVR Partners (the "Rentech Nitrogen GP merger"), and (ii) Lux Merger Sub 2 LLC, a wholly owned subsidiary of CVR Partners ("Merger Sub 2"), will merge with and into Rentech Nitrogen, with Rentech Nitrogen continuing as the surviving entity as a subsidiary of CVR Partners (the "Rentech Nitrogen merger" and together with the Rentech Nitrogen GP merger, the "mergers").

As previously disclosed on page 103 of the Definitive Proxy Statement on Schedule 14A filed with the Securities and Exchange Commission (the "SEC") by Rentech Nitrogen on January 14, 2016 (the "definitive proxy statement"), on August 29, 2015, Mike Mustard, a purported unitholder of Rentech Nitrogen, filed a class action complaint on behalf of the public unitholders of Rentech Nitrogen (the "Mustard plaintiffs") against Rentech Nitrogen, Rentech Nitrogen GP, Rentech Nitrogen Holdings, Inc., Rentech, Inc., CVR Partners, DSHC, LLC, Merger Sub 1 and Merger Sub 2, and the members of the board of directors of Rentech Nitrogen GP (the "Rentech Nitrogen Board") (collectively, the "Mustard defendants"), in the Court of Chancery of the State of Delaware (the "Mustard lawsuit").

Additionally, as previously disclosed on page 103 of the definitive proxy statement, on October 6, 2015, Jesse Sloan, a purported unitholder of Rentech Nitrogen, filed a class action complaint on behalf of the public unitholders of Rentech Nitrogen (the "Sloan plaintiffs" and together with the Mustard plaintiffs, the "plaintiffs") against Rentech Nitrogen, Rentech Nitrogen GP, CVR Partners, Merger Sub 1 and Merger Sub 2, and the members of the Rentech Nitrogen Board (the "Sloan defendants" and together with the Mustard defendants, the "defendants"), which is now pending in the United States District Court for the Central District of California (the "Sloan lawsuit" and together with the Mustard lawsuit, the "lawsuits").

A description of the lawsuits is included under the heading "Proposal 1: The Mergers—Litigation Relating to the Mergers" on page 103 of the definitive proxy statement.

On February 1, 2016, plaintiffs and defendants entered into a MOU providing for the proposed settlement of the lawsuits. While the defendants believe that no supplemental disclosure is required under applicable laws, in order to avoid the burden and expense of further litigation, they have agreed, pursuant to the terms of the MOU, to make certain supplemental disclosures related to the proposed mergers, all of which are set forth below. The MOU contemplates that the parties will enter into a stipulation of settlement. The stipulation of settlement will be subject to customary conditions, including court approval following notice to Rentech Nitrogen's unitholders. In the event that the parties enter into a stipulation of settlement, a hearing will be scheduled at which the United States District Court for the Central District of California (the "Court") will consider the fairness, reasonableness and adequacy of the proposed settlement. If the proposed settlement is finally approved by the Court, it will resolve and release all claims by unitholders of Rentech Nitrogen challenging any aspect of the proposed mergers, the merger agreement and any disclosure made in connection therewith, including in the definitive proxy statement, pursuant to terms that will be disclosed to such unitholders prior to final approval of the proposed settlement. In addition, in connection with the proposed settlement, the parties contemplate that plaintiffs' counsel will file a petition in the Court for an award of attorneys' fees and expenses to be paid by Rentech Nitrogen or its successor. The proposed settlement is also contingent upon, among other things, the mergers becoming effective under Delaware law. There can be no assurance that the Court will approve the proposed settlement contemplated by the MOU. In the event that the proposed settlement is not approved and such conditions are not satisfied, the defendants will continue to vigorously defend against the allegations in the lawsuits.

## SUPPLEMENT TO DEFINITIVE PROXY STATEMENT

In connection with the proposed settlement of the lawsuits as set forth in this Current Report on Form 8-K, CVR Partners and Rentech Nitrogen agreed to make these supplemental disclosures to the definitive proxy statement. These disclosures should be read in connection with the definitive proxy statement and related documents incorporated by reference, which should be read in their entirety. To the extent that information herein differs from or updates information contained in the definitive proxy statement, the information contained herein supersedes the information contained in the definitive proxy statement. Defined terms used but not defined herein have the meanings set forth in the definitive proxy statement.

**The following supplemental disclosure replaces in its entirety the fifth paragraph on page 70 of the definitive proxy statement concerning the Background of the Transactions:**

On August 7, 2015, negotiations between the parties resumed. After further negotiations, the parties agreed that Rentech Nitrogen would be required to pay an expense reimbursement amount ($10 million) and, in the event that Rentech Nitrogen enters into a definitive agreement with respect to an alternative proposal or an alternative proposal is consummated within twelve months after such termination, the full termination fee ($31.2 million) in addition to the expense reimbursement amount. Rentech Nitrogen agreed to the expense reimbursement and termination fee requested by CVR Partners because the alternative structures proposed by CVR Partners were not acceptable to Rentech Nitrogen and CVR Partners was not willing to proceed with a transaction with a fiduciary out at any lesser amount, and Rentech Nitrogen had conducted an extensive, publicly-announced sale process which reduced the likelihood of an alternative proposal after entry into the Merger Agreement. The parties, with the assistance of Vinson & Elkins and Latham & Watkins, also negotiated the form of a separation agreement that would govern a spin-off of the Pasadena Facility, and provisions in the merger agreement relating to a qualified sale or spin-off of the Pasadena Facility.

**The following supplemental disclosure replaces in its entirety the disclosure in the last paragraph on page 79 and the first and second paragraphs on page 80 of the definitive proxy statement concerning the Discounted Cash Flow Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley calculated a range of implied valuations per common unit for Rentech Nitrogen and CVR Partners based on a discounted cash flow analysis, which is designed to provide an implied value of a common unit by calculating the present value of the estimated future cash flows and terminal value of a common unit. In preparing its analysis, Morgan Stanley assumed a valuation date for the Rentech Nitrogen merger of December 31, 2015 and relied upon the Management Projections, the Rentech Nitrogen Sensitivity Case and the CVR Partners Sensitivity Case, in each case for calendar years 2016 through 2019.

In arriving at the estimated equity values per Rentech Nitrogen common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of terminal EBITDA multiples ranging from 7.25x to 8.25x. The projected free cash flows (calculated as operating income, plus depreciation and amortization, less change in net working capital, capital expenditures and taxes) from calendar year 2016 through 2019 and the terminal value were then discounted to present values using a range of discount rates of 8.99% to 9.99%, which range of discount rates was calculated based on Rentech Nitrogen's estimated weighted average cost of capital, taking into account Rentech Nitrogen's cost of equity, estimated based upon the capital asset pricing model to be 11.2%, and cost of debt, estimated based on indicative new debt issue pricing for Rentech Nitrogen from Morgan Stanley's high yield desk as of August 2015 to be 7.5%. This analysis indicated an implied per unit valuation range for Rentech Nitrogen of $12.50 to $15.02, assuming the Rentech Nitrogen Projections, and an implied per unit valuation range of $12.14 to $14.60, assuming the Rentech Nitrogen Sensitivity Case.

In arriving at the estimated equity values per CVR Partners common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of terminal EBITDA multiples ranging from 8.50x to 9.50x. For the purposes of this analysis, Morgan Stanley used Adjusted EBITDA (instead of EBITDA) as provided in the CVR Partners 8/4 Projections to provide for a more representative comparison between CVR Partners and Rentech Nitrogen given the differences in their respective calculations of Adjusted

EBITDA. The projected free cash flows from calendar year 2016 through 2019 and the terminal value were then discounted to present values using a range of discount rates of 9.13% to 10.13%, which range of discount rates was calculated based on CVR Partners' estimated weighted average cost of capital, taking into account CVR Partners' cost of equity, estimated based upon the capital asset pricing model to be 10.2%,, and cost of debt, estimated based on indicative new debt issue pricing for CVR Partners from Morgan Stanley's high yield desk as of August 2015 to be 6.0%. This analysis indicated an implied per unit valuation range for CVR Partners of $11.44 to $12.87, assuming the CVR Partners 8/4 Projections, and an implied per unit valuation range of $11.00 to $12.38, assuming the CVR Partners Sensitivity Case.

**The following supplemental disclosure replaces in its entirety the disclosure in the fourth and fifth paragraphs on page 80 of the definitive proxy statement concerning the Distribution Discount Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

In arriving at the estimated equity values per Rentech Nitrogen common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of forward yields of 12.50% to 13.50% to Rentech Nitrogen management's estimated average 2016 through 2019 distributions per Rentech Nitrogen common unit. The distributions and the terminal value were then discounted to present values using a range of discount rates from 10.71% to 11.71%, based on Morgan Stanley's estimate of Rentech Nitrogen's then current cost of equity, estimated based upon the capital asset pricing model to be 11.2%. This analysis indicated an implied per unit valuation range for Rentech Nitrogen of $13.97 to $15.07, assuming the Rentech Nitrogen Projections, and an implied per unit valuation range of $13.57 to $14.64, assuming the Rentech Nitrogen Sensitivity Case.

In arriving at the estimated equity values per CVR Partners common unit, Morgan Stanley calculated a terminal value as of year-end 2019 by applying a range of forward yields of 9.50% to 10.50% to CVR Partners management's estimated average 2016 through 2019 distributions per CVR Partners common unit. The distributions and the terminal value were then discounted to present values using a range of discount rates from 9.72% to 10.72%, based on Morgan Stanley's estimate of CVR Partners' then current cost of equity, estimated based upon the capital asset pricing model to be 10.2%. This analysis indicated an implied per unit valuation range for CVR Partners of $11.77 to $12.97, assuming the CVR Partners 8/4 Projections, and an implied per unit valuation range of $11.32 to $12.48, assuming the CVR Partners Sensitivity Case.

**The following supplemental disclosure and table replaces in its entirety the last paragraph on page 81 of the definitive proxy statement (which ends on page 82) concerning the Pro Forma Distributable Cash Per Unit Accretion/Dilution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley presented the accretion/dilution analysis below for illustrative purposes only, and it did not factor into the firm's fairness opinion analysis. Using the Management Projections for 2016 through 2019, Morgan Stanley calculated the accretion/dilution of the estimated distributable cash to the existing unitholders of Rentech Nitrogen and CVR Partners, respectively, on a per unit basis. For each of the years ended December 31, 2016 through December 31, 2019, Morgan Stanley compared the distributable cash per unit ("DPU") of the combined entity on a pro forma basis (after accounting for the 1.04x exchange ratio offered to Rentech Nitrogen unitholders and with and without reinvestment of the cash consideration by Rentech Nitrogen unitholders) to the distributable cash per unit of Rentech Nitrogen and CVR Partners, respectively, as stand-alone entities. As shown in the table below, the analysis indicated that the Rentech Nitrogen merger would be (i) without reinvestment of the cash consideration, accretive to Rentech Nitrogen's distributable cash per unit in calendar year 2016 and dilutive in calendar years 2017 through 2019 and (ii) with reinvestment of the cash consideration at the spot rate of a 10-year U.S. Treasury security as of August 7, 2015, accretive to Rentech Nitrogen's distributable cash per unit in calendar years 2016 and 2018 and dilutive in calendar years 2017 and 2019. In addition, the analysis indicated that the Rentech Nitrogen merger would be accretive to CVR Partners' distributable cash per unit in each year for calendar years 2016 through 2019.

| Year | Accretion / (Dilution) to Rentech Nitrogen DPU without reinvestment (%) | Accretion / (Dilution) to Rentech Nitrogen DPU with reinvestment (%) | Accretion / (Dilution) to CVR Partners DPU (%) |
|---|---|---|---|
| 2016 | 4.9 | 9.2 | 1.9 |
| 2017 | (23.7) | (21.0) | 34.6 |
| 2018 | (0.0) | 4.3 | 7.5 |
| 2019 | (23.2) | (20.8) | 28.7 |

**The following supplemental disclosure replaces in its entirety the first full paragraph on page 82 concerning the Relative Contribution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

Morgan Stanley compared Rentech Nitrogen and CVR Partners' respective percentage ownership of the combined company, assuming an at-market transaction with no premium to reflect the relative contributions of each on a trading basis, to Rentech Nitrogen's and CVR Partners' respective percentage contribution to the combined company, excluding synergies, using EBITDA (or Adjusted EBITDA in the case of the CVR Partners 8/4 Projections to provide for a more representative comparison between CVR Partners and Rentech Nitrogen given the differences in their respective calculations of Adjusted EBITDA) and distributable cash flow based on the Management Projections and publicly available equity research analysts' estimates. The following table presents the results of this analysis:

**The following supplemental disclosure is a new paragraph that follows the table on page 82 concerning the Relative Contribution Analysis used by Morgan Stanley in rendering its opinion to the Rentech Nitrogen Board:**

At the time Morgan Stanley rendered its fairness opinion to the Rentech Nitrogen Board, unitholders of Rentech Nitrogen were projected to own approximately 35.8% of the combined company under the terms of the Rentech Nitrogen merger.

**The following supplemental disclosure replaces in its entirety the second and third paragraphs, the table and accompanying footnotes on page 91 of the definitive proxy statement concerning Unaudited Prospective Financial and Operating Information of Rentech Nitrogen:**

Rentech Nitrogen has historically maintained an internal business plan that contains five years of projected financial and operating information. This plan is typically prepared annually, and the plan for the immediate fiscal year is updated periodically throughout the year as necessary for planning and budget purposes, and to reflect changes in circumstances, market conditions or expected production and sales. The longer-term business plan is generally updated only for third-party market pricing forecasts. In the course of due diligence, the management of Rentech Nitrogen updated this internal business plan (which excludes the operations of the Pasadena Facility) for the full fiscal years ending December 31, 2015, 2016, 2017, 2018 and 2019 based on actual results and market conditions.

The following table sets forth certain projected financial and operating information (and certain key assumptions) for Rentech Nitrogen (excluding the operations of the Pasadena Facility) for 2015 through 2019, which are the projections provided to the Rentech Nitrogen board of directors, CVR Partners and/or Morgan Stanley in connection with due diligence of the mergers. The data reflects certain UAN and ammonia pricing and production assumptions of Rentech Nitrogen management.

|  | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **Daily production** | | | | | |
| UAN (short tons) | 775 | 753 | 848 | 789 | 850 |
| Ammonia (short tons) | 921 | 911 | 1,058 | 984 | 1,060 |
| Ammonia available for sale (tons) | 561 | 477 | 571 | 531 | 572 |
| **EBITDA (1)(2)** ($ in millions) | $109.6 | $ 88.1(2) | $111.2 | $ 92.0 | $123.6 |
| **Cash available for distribution** ($ in millions) | $ 73.2 | $ 50.3 | $ 79.2 | $ 53.8 | $ 91.2 |
| **Cash available for distribution per unit** | $ 1.88 | $ 1.29 | $ 2.03 | $ 1.38 | $ 2.34 |
| **Operating income** ($ in millions) | $ 91.3 | $ 70.3 | $ 93.1 | $ 73.5 | $104.7 |
| **Depreciation** ($ in millions) | $ 18.3 | $ 17.8 | $ 18.2 | $ 18.5 | $ 18.9 |
| **Change in net working capital** ($ in millions) | $(11.3) | $ (9.7) | $ (1.4) | $ 1.7 | $ (0.7) |
| **Capital expenditures** ($ in millions) | $(30.3) | $(25.7) | $(10.0) | $(16.0) | $(10.0) |
| **Taxes** | (0.1) | (0.1) | (0.1) | (0.1) | (0.2) |
| **Turnaround expense** ($ in millions) | — | $ 5.0 | — | $ 6.0 | — |
| **Key assumptions** | | | | | |
| *Price* | | | | | |
| UAN ($/short ton) | 255 | 246 | 255 | 257 | 273 |
| Ammonia ($/short ton) | 542 | 516 | 513 | 512 | 553 |

(1)  EBITDA is defined as net income (loss) plus or less net interest expense, depreciation and amortization, income tax expenses or benefit, other income or expense and goodwill and asset impairments.

(2)  Adjusted EBITDA is expected to be $103.3 million in 2016. Adjusted EBITDA is defined as EBITDA as further adjusted for turnaround expenses and sales volume impact due to turnaround. In 2016, the turnaround adjustment is $15.2 million. $5.0 million of this adjustment constitutes turnaround expenses, and the remaining $10.2 million represents sales volume impact due to turnaround. Every two to three years, Rentech Nitrogen closes its facilities for planned maintenance, which is referred to as a "turnaround," and suspends production during these turnaround periods. Sales volume impact due to turnaround represents the expected margins if production had occurred at normal rates during these planned downtime periods.

(3)  Rentech Nitrogen calculates cash available for distribution as EBITDA plus non-cash compensation expense and distribution of cash reserves, less the sum of maintenance capital expenditures not funded by financing proceeds, net interest expense and other debt service and cash reserved for working capital purposes. Distribution of cash reserves represents a discretionary distribution to unitholders from cash on the balance sheet. Rentech Nitrogen has distributed cash reserves in the past when the cash balance is high, and there is sufficient cash on the balance sheet to fund near-term working capital, although Rentech Nitrogen has also distributed cash reserves under other circumstances. Cash is put into reserves, rather than distributed to unitholders, when management determines that additional cash may be necessary in the near term to fund working capital or maintenance capital expenditures.

**Additional Information and Where to Find It**

In connection with the proposed mergers, CVR Partners has filed with the SEC a registration statement on Form S-4 that includes a definitive proxy statement of Rentech Nitrogen that also constitutes a prospectus of CVR Partners.

The definitive proxy statement/prospectus was mailed to unitholders of Rentech Nitrogen on or about January 15, 2016. Unitholders are urged to read the definitive proxy statement/prospectus and other relevant documents filed with the SEC, because they contain important information about the proposed transaction.

Unitholders may obtain free copies of these documents and other documents filed with the SEC at www.sec.gov. In addition, Rentech Nitrogen unitholders may obtain free copies of the documents filed with the SEC by contacting Julie Dawoodjee Cafarella, Vice President, Investor Relations and Communications at (310) 571-9800. CVR Partners unitholders may obtain free copies of the documents filed with the SEC by contacting CVR Partners' Investor Relations at (281) 207-3200.

Rentech Nitrogen, CVR Partners and their respective directors and executive officers and other members of management and employees may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information about directors and executive officers of Rentech Nitrogen is available in its Annual Report on Form 10-K for the year ended December 31, 2014 filed with the SEC on March 16, 2015. Information about CVR Partners' directors and executive officers is available in its Annual Report on Form 10-K for the year ended December 31, 2014 filed with the SEC on February 20, 2015. Other information regarding the participants in the proxy solicitation and a description of their direct and indirect interests, by security holdings or otherwise, is contained in the definitive proxy statement/prospectus and other relevant materials filed with the SEC regarding the mergers. Unitholders should read the definitive proxy statement/prospectus carefully before making any voting or investment decisions. You may obtain free copies of these documents from Rentech Nitrogen or CVR Partners using the sources indicated above.

**Cautionary Statement Regarding Forward-Looking Statements**

This document contains forward-looking statements. All statements other than historical facts, including, without limitation, statements regarding the expected benefits of the mergers to CVR Partners and Rentech Nitrogen and their unitholders, the anticipated completion of the mergers or the timing thereof, the expected financial position, business strategy, revenues, earnings, costs, capital expenditures and debt levels of the combined entity, and plans and objectives of management for future operations, are forward-looking statements. When used in this document, words such as we "may," "can," "expect," "intend," "plan," "estimate," "anticipate," "project," "believe," "will" or "should" or the negative thereof or variations thereon or similar terminology are generally intended to identify forward-looking statements. It is uncertain whether the events anticipated will transpire or, if they do occur, what impact they will have on the results of operations and financial condition of CVR Partners, Rentech Nitrogen or the combined entity. Such forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in, or implied by, such statements. In particular, statements, express or implied, concerning future actions, conditions or events, future operating results, the ability to generate sales, income or cash flow, to realize cost savings or other benefits associated with the mergers, to service debt or to make distributions are forward-looking statements. Forward-looking statements are not guarantees of performance. They involve risks, uncertainties and assumptions. Future actions, conditions or events and future results of operations may differ materially from those expressed in these forward-looking statements. Many of the factors that will determine actual results are beyond the ability of CVR Partners or Rentech Nitrogen to control or predict. For a list of specific factors that could cause actual results to differ from those in the forward-looking statements, see the disclosure under the heading "Cautionary Statement Regarding Forward-Looking Statements" on pages 52 through 54 in the definitive proxy statement/prospectus.

Unless expressly stated otherwise, forward-looking statements are based on the expectations and beliefs of the respective managements of CVR Partners and Rentech Nitrogen, based on information currently available, concerning future events affecting CVR Partners and Rentech Nitrogen. Although CVR Partners and Rentech Nitrogen believe that these forward-looking statements are based on reasonable assumptions, they are subject to uncertainties and factors related to CVR Partners' and Rentech Nitrogen's operations and business environments, all of which are difficult to predict and many of which are beyond CVR Partners' and Rentech Nitrogen's control.

Any or all of the forward-looking statements may turn out to be wrong. They can be affected by inaccurate assumptions or by known or unknown risks and uncertainties. The foregoing list of factors should not be construed to be exhaustive. Many factors, including the risks outlined under the caption "Risk Factors" contained in CVR Partners' and Rentech Nitrogen's Exchange Act reports incorporated into the definitive proxy statement/prospectus

by reference, will be important in determining future results, and actual future results may vary materially. There is no assurance that the actions, events or results of the forward-looking statements will occur, or, if any of them do, when they will occur or what effect they will have on CVR Partners' or Rentech Nitrogen's results of operations, financial condition, cash flows or distributions. In view of these uncertainties, CVR Partners and Rentech Nitrogen caution that investors should not place undue reliance on any forward-looking statements. Further, any forward-looking statement speaks only as of the date on which it is made, and, except as required by law, CVR Partners and Rentech Nitrogen undertake no obligation to update or revise any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of anticipated or unanticipated events or circumstances.

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

<div style="margin-left:50%">

**RENTECH NITROGEN PARTNERS, L.P.,**
a Delaware limited Partnership

By:  Rentech Nitrogen GP, LLC
Its:  General Partner

</div>

Date: February 2, 2016

<div style="margin-left:50%">

By:  /s/ Colin Morris
     Colin Morris
     Senior Vice President and General Counsel

</div>

EXHIBIT "D"

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10 JESSE SLOAN, on behalf of himself and all others similarly situated, | Case No. 2:15-cv-07818-GW-MRW |
| 11 | Assigned To The Honorable George H. Wu |
| 12 Plaintiffs, | CLASS ACTION |
| 13 v. | [PROPOSED] FINAL ORDER AND JUDGMENT |
| 14 RENTECH NITROGEN PARTNERS, LP; MICHAEL S. BURKE; JOHN H. DIESCH; | |
| 15 JAMES F. DIETZ; KEITH B. FORMAN; MICHAEL F. RAY; RENTECH NITROGEN | |
| 16 GP, LLC; CVR PARTNERS, LP; LUX MERGER SUB 1, LLC; AND LUX | |
| 17 MERGER SUB 2, LLC, | |
| 18 Defendants. | |

19
20
21

<u>**ORDER AND FINAL JUDGMENT**</u>

22      On this _____ day of _____, 2016, a hearing having been held before this Court

23  to determine whether the terms and conditions of the Stipulation and Agreement of Compromise

24  and Settlement, dated May 16, 2016 (the "Stipulation" or the "Settlement Agreement"), the terms

25  and conditions of the settlement proposed in the Stipulation (the "Settlement") are fair,

26  reasonable and adequate for the settlement of all claims asserted herein; and whether an order

27  and final judgment should be entered in the above-captioned consolidated class action (the

28

1   "Action"); and the Court having considered all matters submitted to it at the hearing and

2   otherwise;

3        NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

4   THAT:

5        1.     The mailing of the Notice of Pendency of Class Action, Proposed Settlement,

6   Settlement Hearing and Right to Appear (the "Notice") pursuant to and in the manner prescribed

7   in the Scheduling Order on Approval of Class Action Settlement and Class Certification entered

8   on _____, 2016 (the "Scheduling Order"), which was mailed by first class mail beginning on

9   _____, 2016, is hereby determined to be the best notice practicable under the circumstances and

10  in full compliance with Federal Rule of Civil Procedure 23 ("FRCP 23"), the requirements of

11  due process, and applicable law. It is further determined that all members of the Class are bound

12  by the Order and Final Judgment herein.

13       2.     The Court finds that the Action is a proper class action pursuant to FRCP 23(a)

14  and 23(b)(1) and hereby certifies the Class as consisting of:

15      All record and beneficial owners of Rentech Nitrogen Partners, LP ("Rentech Nitrogen")
16      common units who owned or held Rentech Nitrogen common units at any time during the
    period beginning on August 9, 2015 through April 1, 2016, including any and all of their
17      respective successors in interest, predecessors, representatives, trustees, executors,
    administrators, heirs, assigns, or transferees, immediate and remote, and any person or
18      entity acting for or on behalf of, or claiming under, any of them, and each of them (the
    "Class," to be composed of "Class Members"). Excluded from the Class are Defendants,
19      members of the immediate family of any Defendant, any entity in which a Defendant has
    or had a controlling interest, and the legal representatives, heirs, successors, or assigns of
20      any such excluded person. For purposes of the Settlement only, the Action shall be
    certified as a non-opt-out class action pursuant to FRCP 23.

21       3.     Specifically, the Court finds that the Class satisfies the numerosity requirement of

22  FRCP 23(a)(1) and the commonality requirement of FRCP 23(a)(2). As of August 10, 2015,

23  there were over 38 million public units of Rentech Nitrogen ("Units") issued and outstanding

24  that comprise the Class. There are common issues of fact and law sufficient to satisfy FRCP 23,

25  including whether the disclosures made by Rentech Nitrogen in connection with the Proposed

26  Acquisition were adequate, whether the individual defendants breached their fiduciary duties to

27  Class Members, and whether the plaintiffs in this Action ("Plaintiffs'') and Class Members were

28  injured as a consequence of the Defendants' actions. The claims of Plaintiff Jesse Sloan (the

"representative plaintiff") are typical of the claims of absent members of the Class in that they all arise from the same allegedly wrongful course of conduct and are based on the same legal theories, satisfying FRCP 23.  The representative plaintiff and his counsel is an adequate representative of the Class, and the representative plaintiff is hereby appointed as the Class Representative.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for Defendants, and, as a practical matter, the disposition of this Action will influence the disposition of any pending or future identical cases brought by other members of the Class; and there were allegations that defendants acted or refused to act on grounds generally applicable to the Class.

4.     The Settlement of this Action as provided for in the Stipulation is approved as fair, reasonable and adequate, and in the best interests of Plaintiffs and the Class.

5.     The parties to the Stipulation are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation, and the Clerk of the Court is directed to enter and docket this Order and Final Judgment.

6.     In addition to the terms defined above, the following terms shall have the following meanings:

a.   "Released Claims" means all known and Unknown Claims (defined below) of every nature and description whatsoever against any of the Released Parties (defined below), that have been, could have been, or in the future can or might be asserted by Plaintiffs or any member of the Class in their capacity as unitholders, in any forum or proceeding, including class, derivative, individual, or other claims, whether state, federal, or foreign, common law, statutory, or regulatory, including, without limitation, claims under the federal securities or antitrust laws, arising out of, related to, or concerning (i) the Merger, the Merger Agreement, or any element, term, or condition of the Merger or the Merger Agreement, (ii) the Defendants' consideration, evaluation, or approval of the Merger, (iii) the disclosures or any public filings, periodic reports, press releases, proxy statements, or other statements issued, made

available, filed, or otherwise disclosed or communicated related to the Merger, including any amendments thereto, (iv) any unitholder vote on the Merger, (v) the consideration offered, paid, or received by any Released Person or Class member in connection with the Merger, (vi) payments to the Company's directors and executive officers in connection with the Merger, (vii) any alleged aiding and abetting of any of the foregoing, and (viii) any fees, costs, or expenses incurred in prosecuting, defending, or settling the Actions (other than any award pursuant to Paragraph 8 hereof); provided, however, that the Released Claims shall not include the right to enforce this Stipulation or the Settlement.

b.   "Released Parties" means Defendants and their respective predecessors, successors in interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns, or transferees and any person or entity acting for or on behalf of any of them and each of them, and each of their predecessors, successors-in-interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns, or transferees and any person or entity acting for or on behalf of any of them and each of them (including, without limitation, any investment bankers, accountants, insurers, reinsurers, or attorneys and any past, present, or future officers, directors, and employees of any of them).

c.   "Unknown Claims" means any claim that Plaintiffs or any other member of the Class do not know or suspect exist in his, her, or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. With respect to any of the Released Claims, the Parties stipulate and agree that upon final approval of the Settlement, Plaintiffs shall expressly, and each member of the Class shall be deemed to have, and by operation of the final order and judgment by the Court shall have, expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under Cal. Civ. Code §1542 or any

law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code §1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, and, by operation of law, the members of the Class, to completely, fully, finally, and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.  Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

7.      Plaintiffs and all Class Members, and their respective heirs, executors, administrators, estates, predecessors in interest, predecessors, successors in interest, successors, and assigns, hereby fully, finally and forever release, settle and discharge the Released Parties from and with respect to the Released Claims, and are forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties (the "Release of Defendants"); provided, however, that the Release of Defendants does not include Plaintiffs' and Plaintiffs' Counsel's rights to enforce the Settlement.

8.      Defendants hereby fully, finally, and forever release, settle and discharge Plaintiffs, Class Members and Plaintiffs' Counsel from any and all claims arising out of or relating to their filing, prosecution, settlement or resolution of the Action (the "Release of

1  Plaintiffs"); provided, however, that the Release of Plaintiffs shall not include Defendants' rights

2  to enforce the Settlement.

3        9.     The Stipulation and all negotiations, discussions and proceedings in connection

4  with the Stipulation, shall not constitute any evidence, or an admission by any of the Defendants,

5  Plaintiffs or Released Parties, that any acts of wrongdoing have been committed or not been

6  committed and shall not be deemed to create any inference that there is any liability or lack of

7  liability on the part of any of the Defendants or Released Parties.  The Stipulation and all

8  negotiations, discussions and proceedings in connection with the Stipulation, shall not be offered

9  or received in evidence or used for any other purpose in this or any other proceeding in any

10  court, administrative agency, arbitration forum, or other tribunal other than as may be necessary

11  to enforce the terms of the Stipulation; provided, however, that the Stipulation and/or Judgment

12  may be introduced in any proceeding, whether in this Court or otherwise, as may be necessary to

13  argue that the Stipulation and/or Judgment has res judicata, collateral estoppel or other issue or

14  claim preclusion effect or to otherwise consummate or enforce the Settlement or Judgment.

15        10.    California Plaintiff's Counsel are hereby awarded attorneys' fees and expenses in

16  the sum of $ _____ in connection with the Action, which sum the Court finds to be fair and

17  reasonable.  No counsel representing any Plaintiff in the Action shall make any further or

18  additional application for fees and expenses to the Court or any other court.

19        11.    Judgment is hereby entered as to any and all claims or obligations that were or

20  could have been asserted in the Action against the Defendants.

21        12.    If the Effective Date does not occur, this Order and Final Judgment shall be

22  rendered null and void and shall be vacated and, in such event, all orders entered and releases

23  delivered in connection herewith except for paragraphs 10 and 11 of the Stipulation, which shall

24  survive any such termination or vacatur, shall be null and void; the parties returned, without

25  prejudice in any way, to their respective litigation positions immediately prior to the execution of

26  the MOU.

27        13.    The binding effect of this Order and Final Judgment and the obligations of

28  Plaintiffs and Defendants under the Settlement shall not be conditioned upon or subject to the

resolution of any appeal from this Order and Final Judgment that relates solely to the issue of Plaintiffs' Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

14.     Without affecting the finality of this Order and Final Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

Dated: _____, 2016                    BY THE COURT:

                                                 _____

                                                 HON. GEORGE H. WU

EXHIBIT "2"

LAW OFFICES

# BRODSKY & SMITH, LLC

9595 WILSHIRE BOULEVARD, SUITE 900
BEVERLY HILLS, CA 90212
—
877–534–2590
FAX 310–247–0160
www.brodsky-smith.com

| | | |
|---|---|---|
| PENNSYLVANIA OFFICE | NEW YORK OFFICE | NEW JERSEY OFFICE |
| TWO BALA PLAZA,, SUITE 510 | 240 Mineola Blvd. | 1040 KINGS HIGHWAY NORTH, STE. 601 |
| BALA CYNWYD, PA 19004 | Mineola, NY 11501 | CHERRY HILL, NJ 08034 |
| 610–667–6200 | 516.741.4977 | 856.795.7250 |

Brodsky & Smith, LLC is a law firm that was organized under the Limited Liability Laws of the Commonwealth of Pennsylvania in 1998.  The firm's attorneys are licensed to practice in both state and federal courts in the Commonwealth of Pennsylvania, the State of New Jersey, the District of Columbia, the State of California, and the State of New York.

The firm represents individuals and businesses in various types of litigation matters including, securities class action; shareholder derivative litigation; merger and acquisition litigation; civil rights litigation; complex commercial litigation; consumer protection litigation; ERISA litigation; and personal injury litigation.

The firm's offices are located in Bala Cynwyd, Pennsylvania; Cherry Hill, New Jersey; Mineola, New York; and Beverly Hills, California.

## QUALIFICATIONS OF MEMBERS

### JASON L. BRODSKY:

Jason Lawrence Brodsky is a founding member of Brodsky & Smith, LLC and has over fifteen years of experience representing plaintiffs in complex class action litigation.  His current areas of practice include Class Action Civil Rights Litigation, Class Action Securities, Derivative Shareholder, Merger and Acquisition Litigation; Commercial Litigation; Catastrophic Injury Litigation; and Workers' Compensation Litigation.

He is an experienced trial attorney, who has successfully obtained consent decrees, verdicts, and settlements in various state and federal courts around the country on behalf of injured, wronged, or discriminated against individuals and businesses. In January 2011, after a two-week jury trial, he obtained a $3.0 million dollar verdict on behalf of the firm's client in the Pennsylvania Court of Common Pleas - Philadelphia Court in a construction accident negligence claim.  Prior to forming the firm, he was an attorney at a 150 attorney insurance defense firm in Philadelphia where he represented Fortune 500 clients, insurance companies, and municipal entities, including the City of Philadelphia.

He received his Juris Doctor from Widener University School of Law (1996)

where he was a member of the Trial Advocacy Honor Society.  He also received his Bachelor of Arts in Criminology from Pennsylvania State University (1993).

He is licensed to practice in both the Commonwealth of Pennsylvania (1996) and the State of New Jersey (1996).  He is also licensed to practice in the United States Court of Appeals for the Ninth Circuit (2008); United States District Court for the Eastern District of Pennsylvania (1998) and United States District Court of New Jersey (1996).  He has also been admitted *pro hac vice* in state and federal courts across the country in various matters.

### *EVAN J. SMITH*:

Evan Jason Smith is a founding member of Brodsky & Smith, LLC who has over fifteen years of experience representing plaintiffs in class action litigation.  His current areas of practice include Civil Rights Litigation, Class Action Securities, Shareholder Derivative, and Merger and Acquisition Litigation; Commercial Litigation; ERISA Litigation; and Personal Injury Litigation.

In January 2011, after a two-week jury trial, he and Jason Brodsky obtained a $3.0 million dollar verdict in the Pennsylvania Court of Common Pleas - Philadelphia County for their client in a construction site accident.

In 2010, he was one of the lead negotiators and Settlement Counsel for the shareholder class In re Allied Capital Shareholder Litigation, Circuit Court of Maryland, Montgomery County, No. 322639., and represented two of the named class representatives.  The settlement resulted in a dividend in the amount of $0.20 per share, increasing the consideration received in the merger to Allied shareholders by approximately $36 million.  Allied also agreed to include certain supplemental disclosures that related to the sales process and background of the merger, as well as the financial analyses of the Acquisition.

He was also Lead Counsel in In re Ryland Securities Litigation which settled for $1.2 Million Dollars (2008) and In re A Million Little Pieces Litigation which settled for $2.35 Million Dollars (2007).  In May 2002, he convinced the court, in McCain v. Beverly Enterprises, Inc. CV-02-657 (E.D.Pa.), to reverse the long standing and prevailing case law which precluded injured plaintiffs from bringing a claim for damages under a negligence per se theory against medical facilities for violations of state and federal statutes regarding standard of care towards patients.  This reversal lowered the burden of proof in civil cases for injured plaintiffs when a governmental agency has found a defendant in violation of state and/or federal standard of care statutes.  This case has been cited by many jurisdictions across the country in nursing home neglect litigation.

He has also been Lead Counsel in several disability class action lawsuits that have resulted in thousands of public accommodations throughout the country being remediated to ensure accessibility on behalf of the mobility impaired, and millions of dollars obtained on behalf of the same mobility impaired classes.

He was selected as a Pennsylvania Super Lawyers' Rising Star (Attorneys Under 40), an honor bestowed upon less than 2.5% of Pennsylvania attorneys for each of the years 2005-2009. He began his legal career as an attorney at a Philadelphia boutique litigation law firm where he worked on complex commercial litigation matters for both plaintiffs and defendants.  Prior to forming Brodsky & Smith, LLC, he was an attorney at a Philadelphia insurance defense law firm in the Premises and Casualty Liability Litigation Department.

Upon graduating law school, he served as a judicial law clerk for the Honorable Albert W. Sheppard, Jr. of the Philadelphia Court of Common Pleas, First Judicial District.  He also served as a student law clerk for the Honorable William H. Yohn of the United States District Court for the Eastern District of Pennsylvania and the Honorable John T.J. Kelly, Jr. of the Commonwealth of Pennsylvania Superior Court.

He received his Juris Doctor from Temple University School of Law (1996) where he was a member of the Moot Court Honor Society and the Political and Civil Rights Law Review.  He also served as a clinical intern at the Philadelphia District Attorney's Office.  He received his Bachelor of Arts in International Politics and a minor degree in Spanish from Pennsylvania State University (1993).

He is licensed to practice in state courts for the Commonwealth of Pennsylvania (1996), the State of New Jersey (1996), the District of Columbia (1999), the State of New York (2002), and the State of California (2006).  He is also licensed to practice in federal courts for the United States Supreme Court (2003); United States Court of Appeals for the Third Circuit (1998), United States Court of Appeals for the Second Circuit (2007); United States Court of Appeals for the Ninth Circuit (2007); United States District Court for the Eastern District of Pennsylvania (1998), United States District Court of New Jersey (1996), United States District Court for the Southern District of New York (2002), United States Court for the Eastern District of New York (2003), United States District Court for the Northern District of New York (2003), United States District Court for the District of Colorado (2003); United States District Courts for the Northern, Southern, Central and Eastern Districts of California (2006).  He has also been admitted *pro hac vice* in state and federal courts across the country in various matters.

### MARC L. ACKERMAN:

Marc L. Ackerman joined Brodsky & Smith, LLC as a partner in October 2002. He has over twenty-five years experience in representing both plaintiffs and defendants in complex litigation.  His current areas of practice include Class Action Shareholder, Derivative, and Merger and Acquisition Litigation; Commercial Litigation; and Civil Rights Litigation.

He began his legal career as an associate in the litigation department of a 250 attorney Philadelphia law firm.  After working for the Department of Justice as a Special Assistant United States Attorney for the Eastern District of Pennsylvania, he joined a 300 attorney Philadelphia law firm where he concentrated his practice in insurance and

3

commercial litigation matters.  As a partner he represented Fortune 500 clients in insurance fraud, RICO, wrongful death and other complex insurance matters.  Prior to joining Brodsky & Smith, LLC, he was Pennsylvania resident counsel for a small boutique class action firm based in Connecticut.

He received his Juris Doctor from Temple University School of Law (1989) where he served as the Director of Temple - LEAP, an organization dedicated to introducing secondary school students to the profession and practice of law.  He received his Bachelor of Arts from Villanova University (1986, cum laude).

He is licensed to practice in state courts for the Commonwealth of Pennsylvania (1989) and the State of New Jersey (1990).  He is also licensed to practice in federal courts for the United States Supreme Court (2003); United States Court of Appeals for the Third Circuit (1995); Eastern District of Pennsylvania (1990) and United States District Court of New Jersey (1990).  He has also been admitted *pro hac vice* in state and federal courts across the country in various matters.

### JORDAN A. SCHATZ:

Jordan A. Schatz joined Brodsky & Smith, LLC as an associate in 2010.  His current practice areas include Class Action Shareholder, Derivative, and Merger and Acquisition Litigation; Commercial Litigation; and Civil Rights Litigation.

He received his Juris Doctor from Drexel University Earl Mack School of Law (2009) where he received a full academic scholarship.  He received his Bachelor of Science in Finance and a minor in International Business from Pennsylvania State University (2006).

He is licensed to practice in state courts for the Commonwealth of Pennsylvania (2009).

### RYAN P. CARDONA:

Ryan P. Cardona joined Brodsky & Smith, LLC. in 2015 as an associate. His current areas of practice include Class Action Shareholder Litigation, Class Action Civil Rights Litigation, and Class Action Consumer Protection Litigation.

He received his Juris Doctorate from Villanova University School of Law (2013) where he received the Deidre L. Bailey Leadership Scholarship. He received his Bachelor of Arts in Political Science and a minor in History from Sonoma State University (2010).

He is licensed to practice in state courts for the Commonwealth of Pennsylvania (2013), the State of New Jersey (2013), and the State of California (2014).

4

*LANCE G. GREENE:*

Lance G. Greene joined Brodsky & Smith, LLC as of counsel in March 2008 and has worked with the firm since 2007.  His current practice areas include Commercial Litigation; Business Litigation; and Personal Injury Litigation.

Prior to opening his own litigation practice in Los Angeles, Lance was a senior associate in the business litigation department of a mid-sized full service law firm based in Irvine, California.  Lance is a member of the California State Bar and the Los Angeles County Bar Association.

Lance is a successful trial counsel as partially reflected by his $1.5 million unanimous jury verdict in federal court in the employment discrimination matter of *Martin v. Arrow Electronics*, which was the second largest federal trial verdict in Orange County in 2006.

Lance received his Juris Doctor from the University of Minnesota School of Law (1992), and his Bachelor of Science from Arizona State University (1985, History).  Lance is also a former United States Naval officer, having obtained his commission as Ensign in 1985, served on the USS Dwight D. Eisenhower, CVN 69 from 1985- 1989, where he attained the rank of Lieutenant and completed his inactive reserve service in 1993.

He is licensed to practice in the State of California (1993); United States District Court for the Central District of California (1993); and United States District Court for the Eastern District of Michigan (2002).

# *SELECT FIRM ACCOMPLISHMENTS*

## *CLASS ACTION LITIGATION*

Brodsky & Smith, LLC has demonstrated time and again its reputation for vigorously and tenaciously protecting the rights and interests of shareholders in complex litigation involving breach of fiduciary duty claims.  The firm was Class Counsel in *In re Bluegreen Shareholder Litigation*, 502011CA018111, 15th Judicial Circuit, Palm Beach County, Florida, where it was able to secure a $36.5M settlement for a class of shareholders (25% more consideration than originally given in the merger) in a post-merger damages case.  This settlement received Court approval in September, 2015 and is the largest post-merger damages settlement in Florida history.  The firm was also one of the lead negotiators and Settlement Counsel representing two of the named class representatives, in *In re Allied Capital Corporation Shareholder Litigation*, No. 322639-V, MD Cir. Court (2009) (settlement achieved a $35 million additional dividend to the Class as part of the Merger Transaction and additional disclosures).

The firm also has served as lead counsel in: *In re Brooklyn Federal Bancorp Shareholder Litigation*, 500690/2011, Supreme Court of New York, Kings County, where it was able to secure a 9% increase in the merger consideration for the class and a 35%

reduction of the termination fee; *In re Ryland Group, Inc. Securities Litigation* (Northern District of Texas - 3:04-CV-541G) ($1.2 Million settlement for the Class), *SPX ERISA Litigation* (W.D.N.C.- 3:04cv192) ($6.5 Million for the class); *A Million Little Pieces Litigation* (SDNY - 07-mdl-1771) ($2.35 Million for the class); and *In re Herald National Bank Shareholder Litigation*, 651629/2011, Supreme Court of New York, New York County, which secured a 10% reduction in the termination fee and 6 month reduction in the length of time the termination fee would be triggered.  The firm was also successful in obtaining the waivers of the "Don't Ask, Don't Waive" standstill provisions with potential acquirers, thereby creating a significant opportunity for shareholders to obtain maximum value for their shares in the sales processes in *In re MPG Shareholder Litigation*, BC507342, Superior Court of California, Los Angeles County, and *In re Furiex Shareholder Litigation*, 14-CV-6156, Superior Court of North Carolina, County of Wake.

The firm is currently Lead Counsel in the certified class of all Pennsylvania local governmental units in *Delaware County v. First Union National Bank* (Del. Cty., PA 01-6326).  The case has survived several appeals; the latest appellate victory being argued by the firm before the Supreme Court of Pennsylvania.

### CIVIL RIGHTS LITIGATION

Brodsky & Smith, LLC represents disabled individuals and advocacy groups in various litigation matters across the country.  This representation includes enforcement of Title III of the Americans with Disabilities Act, 42 U.S.C. Section 12181, as well as its equivalent state law counterparts.  Through this representation, the firm's clients attempt to make public accommodations accessible to all disabled individuals.  Brodsky & Smith, LLC has achieved both Consent Decrees and settlements on behalf of our clients against hundreds of public accommodations around the country.  The firm is Class Counsel in the following certified matters:

*Velasco v. Mrs. McGooch*, Superior Court of California – Los Angeles County (BC428347) which achieved a settlement for the Class in an amount of $750,000.00 and complete remediation at over 160 Whole Foods locations in the State of California.  The matter has been approved by the Court in February 2012 and is in the remediation stage.

*Acevedo v. TSA Stores, Inc.*, (CDCal. 11-2592) which achieved a settlement for the Class in an amount of $625,000.00 and complete remediation at over 70 Sports Authority locations in the State of California.  The matter has been approved by the Court in January 2012 and is in the remediation stage.

*Hicks v. Smart & Final*, Superior Court of California – Los Angeles County (BC428347) which achieved a settlement for the Class resulting in complete remediation at over 75 Smart & Final locations in the State of California.  The matter has been approved by the Court in October 2011 and is in the remediation stage.

*Pereira v. Ralph's Grocery Company*, (CDCal 07-841-PA) and *Park v. Ralph's Grocery Company*, (CDCal 08-02021-CAS), two related class cases which obtained class

certification over Defendants' opposition for two classes for Defendants' 250 plus California locations.  After successfully obtaining a reversal of summary adjudication from the United States Court of Appeal for the Ninth Circuit, the parties reached a settlement for complete remediation.  This settlement received final Court approval in June 2010 and is in the remediation stage.

*In re Coffee Bean Litigation* (CDCal 06-7448-PG), which achieved a $750,000 settlement for the Class and complete remediation at over 250 Coffee Bean locations in the State of California.