UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7818-GW(MRWx) | Date | October 6, 2016 |
|---|---|---|---|
| Title | *Jesse Sloan v. Rentech Nitrogen Partners, LP, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Evan Jason Smith | Michael A. Firestein | |

**PROCEEDINGS:** PLAINTIFF'S MOTION FOR ORDER GRANTING: (1) APPROVAL OF APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL; (2) FINAL APPROVAL OF PROPOSED SETTLEMENT AND CLASS CERTIFICATION; AND (3) FINAL CERTIFICATION OF SETTLEMENT CLASS [43];

PLAINTIFF'S MOTION FOR ORDER GRANTING APPROVAL OF AWARD OF ATTORNEYS' FEES [45]

The Court's Tentative Ruling is circulated and attached hereto. Court and counsel confer. Based on the Tentative, and for reasons stated on the record, Plaintiff's Motion [43] is GRANTED. Order to issue. Plaintiff's Motion for Attorneys' Fees [45] is continued to November 10, 2016 at 8:30 a.m. Plaintiff will have until October 14, 2016 to file his supplemental brief. Defendants will respond by October 28, 2016.

|  | : | 15 |
|---|---|---|
|  | Initials of Preparer | JG |

*Sloan v. Rentech Nitrogen Partners, LP, et al.*, Case No. 2:15-cv-07818-GW (MRWx) Tentative Rulings on: (1) Motion for Order Granting − (a) Approval of Appointment of Class Representative and Class Counsel; (b) Final Approval of Proposed Settlement and Class Certification; and (c) Final Certification of Settlement Class, and (2) Motion for Order Granting Approval of Award of Attorneys' Fees and Expenses

I. **Background**

Plaintiff Jesse Sloan ("Plaintiff") moves for approval of her appointment as class representative and of her counsel as class counsel, final approval of a class action settlement she reached with defendants Rentech Nitrogen Partners, LP, Michael S. Burke, John H. Diesch, James F. Dietz, Keith B. Forman, Michael F. Ray, Rentech Nitrogen GP, LLC, CVR Partners, LP, Lux Merger Sub 1, LLC, and Lux Merger Sub 2, LLC, final certification of a settlement class, and an award of attorneys' fees and costs. Plaintiff filed this action on October 6, 2015. In general, the case concerns allegations surrounding the announcement of a planned merger between Rentech Nitrogen Partners, LP and CVR Partners, LP.

At the time of settlement, Plaintiff advanced six claims for relief: (1) breach of express and implied duties; (2) aiding and abetting breach of express and implied duties; (3) breach of fiduciary duties; (4) aiding and abetting breach of fiduciary duties; (5) violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; and (6) violations of Section 20(a) of the Exchange Act. Plaintiff sought, among other things, to enjoin consummation of the merger, damages, and attorneys' fees and costs. The settlement provides no monetary relief, but caused the dissemination to class members of additional information and, after the issuance of that information, the unitholders approved the merger. After supplemental briefing on the issue, the Court preliminarily approved the settlement on July 7, 2016. *See* Docket No. 41.

II. **Analysis**

A. **Jurisdiction**

This Court has subject matter jurisdiction over this action based on federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See* Class Action Complaint, Docket No. 1, ¶ 24. No defendant contested personal jurisdiction.

B. **Notice**

Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980). The Notice process the Court ordered and the parties followed here involved mailing notice by way of First Class mail and, as recounted in Plaintiff's papers, resulted in the mailing of 12,635 Notices. *See* Swanson Decl. (Docket No. 49), ¶¶ 6-12; Swanson Decl. (Docket No. 50), ¶ 3; *see also* Smith Decl. (Docket No. 47) ¶ 23. The Court has determined that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to

object. *See* Fed. R. Civ. P. 23(e); *see also* Smith Decl. (Docket No. 47) ¶ 19. Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### C. Certification of the Class and Approval of Class Representative/Counsel

Plaintiff seeks final certification of the following class:

> All record and beneficial owners of Rentech Nitrogen Partners, LP ("Rentech Nitrogen") common units who owned or held Rentech Nitrogen common units at any time during the period beginning on August 9, 2015 through April 1, 2016, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them (the "Class," to be composed of "Class Members"). Excluded from the Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person.

Docket No. 47-12, at 2:15-20. The class is a non-opt-out class, as the Court acknowledged was appropriate in its July 7, 2016 order preliminarily approving the settlement. *See* Docket No. 41, at pg. 4 of 5.

Certification of this class is appropriate. For the reasons addressed in Plaintiff's motion, the class easily meets the numerosity, commonality and typicality requirements of Federal Rule of Civil Procedure 23(a)(1)-(3). See Docket No. 44, at 4:10-5:24. There is also nothing to suggest that either Plaintiff or Plaintiff's counsel would fail the "adequacy" requirement set out in Federal Rule of Civil Procedure 23(a)(4).[1]

With respect to the requirements of Federal Rule of Civil Procedure 23(b), Plaintiff argues that the class here satisfies both Rule 23(b)(1)(A)[2] and Rule 23(b)(2)[3]. The Court agrees – at least insofar as it considers the limited relief achieved by way of

---

[1] Related to this issue, the Court is not troubled to the point of declining to appoint Plaintiff's counsel as class counsel. However, the Court would note the relative lack of detail provided in the current motion papers concerning Plaintiff's counsel's experience in litigation of this type (both class actions in general and merger/acquisition litigation more specifically). Plaintiff has simply referred the Court to Plaintiff's counsel's law firm resume, which makes only brief references to counsel's experience relevant to this type of litigation. *See* Smith Decl. (Docket No. 47-6) ¶ 8 & Exh. A; Smith Decl. (Docket No. 30) Exh. 2.

[2] "A class action may be maintained if Rule 23(a) is satisfied and if…prosecuting separate actions by or against individual class members would create a risk of…inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class…." Fed. R. Civ. P. 23(b)(1)(A).

[3] "A class action may be maintained if Rule 23(a) is satisfied and if…the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…." Fed. R. Civ. P. 23(b)(2).

the settlement – that the settlement class satisfies Rule 23(b)(1)(A), especially insofar as another lawsuit concerning the merger had already been filed. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'"); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1194 (9th Cir. 2001) ("Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of adjudications in which the defendant will be required to follow inconsistent courses of continuing conduct. This danger exists in those situations in which the defendant by reason of the legal relations involved [cannot] as a practical matter pursue two different courses of conduct.") (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)) (omitting internal quotation marks); *In re Dennis Greenman Secs. Litig.*, 829 F.2d 1539, 1544-45 (11th Cir. 1987) ("The relevant Note states that the section is proper in suits to invalidate a bond issue, to declare the rights and duties of riparian owners or landowners, or to abate a common nuisance."); *see also In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1263-64 (10th Cir. 2004) ("A widely-recognized limitation on (b)(1)(A) certification requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.'") (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 687 (D. Kan. 1994)). In addition, at least insofar as certification is for settlement-purposes only (where the settlement resulted only in additional disclosures by way of an SEC filing), Rule 23(b)(2) is satisfied as well. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) ("[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.") (omitting internal citation); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011) ("We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.").

**D. The Merits of the Settlement**

1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires court approval. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making the typical Rule 23(e) determination, the court may consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982). This list is not intended to be exhaustive; the court must consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625. At least where settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946-47 (9th Cir. 2011).

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

    2. The Settlement is Fair

        a. The Settlement Enjoys a Presumption of Fairness

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The only information before the Court on this issue is that Plaintiff – who is represented by counsel at least somewhat experienced in class action and merger-related litigation, *see* Smith Decl. (Docket No. 47-6) ¶ 8 & Exh. A – reached a settlement on February 1, 2016, after "extensive arms' length negotiations."[4] *See* Smith Decl. (Docket No. 47) ¶ 13. This obviously provides little detail that would allow for the Court to verify that assertion. In terms of discovery, Plaintiff's counsel reports having reviewed thousands of pages of documents and conducting two depositions (in addition to having consulted with an expert). Finally, no class member has objected in connection with any of the relief requested by way of the settlement or the accompanying request for fees/expenses.

---

[4] The Court does acknowledge the very brief amount of time – not quite four months – between filing and settlement of this lawsuit. However, considering that the suit sought to enjoin a merger, a speedy resolution of the lawsuit does not necessarily indicate any form of collusion so much as it reflects a desire to maneuver past the litigation roadblock to achieve the business objective.

Although the showing in this regard certainly could be more robust, the discovery conducted in the few short months between Complaint-filing and settlement-in-principle and, especially, the lack of any objections from any class members is sufficient for the Court to conclude that a presumption of fairness operates with respect to this settlement. In any event, even if no presumption was in effect, this would not preclude the Court's determination that the settlement, in fact, meets the requisite fairness standard.

### b. The Settlement is Fair, Adequate, and Reasonable

#### i. The Strength of the Case

The case, as a whole, was not strong, as Plaintiff candidly admits in the present briefing. However, it was strong enough to force the issuance of further disclosures related to the merger. Dealing from a position of relative weakness, the fact that Plaintiff was able to achieve at least that relief is notable. Achieving some settlement (and the certainty that comes along with it) under those circumstances obviously weighs in favor of approving that settlement.

#### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). This case had not yet reached class certification, meaning that proceedings pegged to that end were still to come. Plaintiff also identifies the serious difficulties – both in terms of time required and legal obstacles – perceived in obtaining any monetary recovery for the class, predicting success in this area as "remote" and producing likely "small or nonexistent" damage figures. Docket No. 44, at 7-10. Had the case proceeded to the merits in some fashion, future appellate proceedings could be expected. Time and resources spent in those efforts could potentially have delayed or prevented the merger in question from occurring, and would have only increased the amount of attorney's fees to be incurred in the case.

Again, against all of this, the settlement agreement gave the parties immediate, though perhaps limited, relief. This factor therefore weighs in favor of approving the settlement.

#### iii. The Risk of Maintaining Class Action Status Throughout Trial

Once achieved (as it likely would have been), there would seemingly have been relatively little risk to maintaining class certification here. As is the case in many securities-related actions, this case was a natural candidate for certification. This risk factor, therefore, does not especially counsel in favor of the settlement, though of course it also does not detract from the appropriateness of such an outcome.

#### iv. The Amount/Relief Offered in the Settlement

"Basic to [the process of deciding whether a proposed compromise is fair and

5

equitable] in every instance…is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965. *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action.") (omitting internal citation).

The settlement resolves both this action and an action in the Court of Chancery of the State of Delaware, *Mustard v. Burke*, Case No. 11446-CB (though that case had apparently been voluntarily dismissed before this Court even granted preliminary approval of this action, *see* Firestein Decl. (Docket No. 51-2) ¶ 12). Here, the only benefit to the class resulting from this settlement is Rentech Nitrogen Partners, LP's February 2, 2016, filing of a Form 8-K with the SEC which included certain supplemental information concerning the merger. *See* Smith Decl. (Docket No. 47) ¶ 14 & Exh. A. In particular, the class was extended new information concerning:

> (i) multi-year projections of all of the necessary components of free cash flow according to the definition of free cash flow used by Morgan Stanley, Rentech Nitrogen's financial advisor; (ii) the Board's consideration of the analysis conducted by Morgan Stanley, in connection with its fairness opinion; and (iii) how and why the final terms of the Merger were structured.

Docket No. 44, at 11:5-9. This new information followed an earlier, September 17, 2015 Form S-4 Registration Statement CVR Partners, LP had filed with the SEC before initiation of this action. Once the unitholders had this additional information, they voted to approve the merger.

However, when compared to what Plaintiff sought at the outset, the result falls short of what Plaintiff might have achieved, compare Complaint at 37, and includes no monetary compensation. *Compare* Complaint at 37:4-16. However, as the Court noted when it considered the settlement at the preliminary approval stage, Plaintiff had "concluded that [the] chances of success on the claims related to monetary damages would have been an 'uphill battle' and 'extremely slim at best'" because of the defenses available to the defendants. *See* Docket No. 41, at pgs. 2-3 of 5. The Court cannot say that Plaintiff's prognostication to that effect was unreasonable. In addition, the Court places special emphasis on the fact – addressed further, *infra* – that no class member has objected to this settlement. As a result, the Court believes that the relief achieved by way of the settlement reflects a fair compromise and supports approval of the settlement.

> v. <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

A class plaintiff must be armed with sufficient information about the case to have been able to reasonably assess strengths and value and to broker a fair class settlement.

6

While clearly more discovery still could have been taken had this case proceeded, Plaintiff obtained from the defendants, and reviewed, nearly 8,000 pages of confidential non-public documents, as well as publicly available documents including Rentech Nitrogen Partners, LP's SEC filings, trading history and news reports. *See* Smith Decl. (Docket No. 47) ¶ 11. Plaintiff also deposed Rentech Nitrogen Partners, LP's Chief Financial Officer, along with a representative of Morgan Stanley, the financial advisor to Rentech Nitrogen Partners, LP in connection with the merger. *See id.* ¶ 12. Plaintiff also conferred with a financial expert "engaged for the purposes of analyzing the Merger, the fairness of the Merger, and the adequacy of the disclosures made by Defendants in connection with soliciting the votes of the Company's unitholders on the Merger." *Id.* In addition, once the parties had a reached a Memorandum of Understanding containing the terms for the agreement-in-principle to settle, Plaintiff reviewed additional confidential non-public documents relating to the merger. *See id.* ¶¶ 13-14.

The Court sees no substantial reason to doubt that Plaintiff was in sufficient position to know the strengths (and weaknesses) of the case, its value, and whether or not the settlement "output" properly accounted for those "inputs."

### vi. The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). Obviously, class counsel – who claim (without opposition on this point) to be experienced in both class and merger/acquisition litigation– consider the settlement to be fair and reasonable. *See* Smith Decl. (Docket No. 47) ¶ 17; *see also* Footnote 1, *supra*. Moreover, ultimately Plaintiff achieved an end which simply offered class members the opportunity to, in effect, have the final say on the sufficiency of the information obtained by way of this litigation – and once they obtained it, they voted in favor of the merger.

This factor therefore weighs in favor of approving the settlement.

### vii. The Presence of a Governmental Participant

The notice administrator reports having provided the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Swanson Decl. (Docket No. 49) ¶¶ 3-5. There is no indication that any governmental entity participated in the settlement of this case or that any government action led to Plaintiff's commencement of the case. This factor is therefore neutral.

### viii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529.

Here, after the notice-provision efforts recounted above, there have been no objections whatsoever from any class members. Therefore, this factor fairly obviously strongly supports approving the settlement.

### ix. Signs of Collusion

Aside from the relative speed in which it was achieved, *see* Footnote 4, *supra*, there is nothing before the Court, either explicitly or implicitly, which suggests that the instant settlement was in any way the product of collusion. Indeed, certain of the defendants have gone so far as to object to Plaintiff's fee/cost motion. *See* Docket No. 51-1; *see also* Smith Decl. (Docket No. 47) ¶ 20. As such, there is nothing to suggest that this factor would in any way detract from approval of the settlement.

### c. Conclusion re Reasonableness of Settlement

Upon consideration of the above-stated factors, the Court concludes that the settlement reached in this case is reasonable. It would therefore grant the motion for appointment of class representative/class counsel, final approval of the settlement, and certification of a settlement class.

### 3. Attorneys' Fees and Expenses

Plaintiff moves for an award of $400,000 in attorneys' fees and $37,021.56 in expenses. As Plaintiff acknowledges, that fee amount includes a 1.15 lodestar multiplier. As it does *not* acknowledge (at least not in its supporting memorandum of points and authorities), but as defendants CVR Partners, LP, Lux Merger Sub 1, LLC and Lux Merger Sub 2, LLC ("the Fee Defendants") point out in their objections to this motion, it also includes $132,518 in fees and $6,662.82 in costs incurred by attorneys who never appeared in this action (but were merely of counsel in the Delaware *Mustard* action – a case that was filed *before* the filing of the September 17, 2015 registration statement, the inadequacy of which led to the only relief achieved by way of the settlement here) and who the Class Notice did *not* disclose would be the subject of any fee application. The Fee Defendants object to any fee/cost award in favor of those attorneys.

The Fee Defendants also object to the fees/expenses Plaintiff's counsel seeks, arguing that the fees are unreasonable given the limited relief Plaintiff was able to achieve and the admitted shortcomings in much of Plaintiff's case. They also argue that Plaintiff's supporting materials fail to sufficiently justify the fee award because counsel did not provide any supporting fee records to the Court and even those records counsel *privately* shared with the Fee Defendants reflected only "block billing." Plaintiffs suggest that the Court award Plaintiff no more than $100,000 in fees and $13,054.26 in costs,[5] and object to the Court's consideration of any supplemental materials that were

---

[5] This represents 43% of the lodestar number for Plaintiff's counsel (without a multiplier) and 43% of the expenses Plaintiff's counsel seeks. The Fee Defendants reach that percentage by arguing that Plaintiff certainly achieved no more than half of what this action sought (and the limited records submitted do not attempt to demonstrate with any more certainty than that how much time actually was spent on the limited relief achieved) and that the defendants also should not be saddled with any fees incurred by way of the supplemental briefing the Court required on Plaintiff's motion for preliminary approval, wherein Plaintiff explained the determinations made concerning likelihood of prevailing on any more than the relief actually achieved by way of the settlement. It was that supplemental briefing that highlighted for the Court that Plaintiff had all but given up at least on any belief that the Complaint's first four claims for relief could be

not provided along with Plaintiff's original motion papers.[6]

The Court does not disagree with Plaintiff regarding the appropriateness of some form of fee award here. *See, e.g., Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1137-38 (9th Cir. 1979). But because there is no monetary recovery from which to draw any fee award, the Court must employ the lodestar method of calculating a reasonable fee award. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("The 'lodestar method' is appropriate in class actions where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation."). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth Headset*, 654 F.3d at 941.

It is true that the Court has received *zero* shareholder objections in connection with this final approval/fee award proceeding. However, as the Fee Defendants (who explicitly reserved the right to object to any fee/expense application, *see* Smith Decl. (Docket No. 30) at pg. 51 of 78) point out, the Class Notice gave the class no notice that fees would be sought on behalf of attorneys who did not even appear in this action. Instead, it specifically indicated that only Plaintiff's counsel would seek fees and that Plaintiff's counsel was "the sole contributing factor" for the relief obtained by way of the settlement. *See* Smith Decl. (Docket No. 30), at pgs. 51-52 of 78 (reflecting 1) the heading "CALIFORNIA PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND EXPENSES"; 2) the Supplemental Disclosures "and the other terms and conditions of the Settlement in which California Plaintiff's Counsel were the sole contributing factor"; 3) that California Plaintiff's Counsel would petition the Court for "an award of attorneys' fees and expenses incurred in connection with the Actions" and 4) that any fees and

---

established. *See generally Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liability Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011) ("[W]here the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation – even those reasonably spent – may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 440 (1983)). The Fee Defendants also persuasively argue that there are no factors counseling in favor of a multiplier in this fairly standard merger litigation. While the Court would find that 43% figure somewhat arbitrary, a more precise determination has thus far been stymied by Plaintiff's insufficient showing on this motion, as addressed herein.

[6] Though the Scheduling Order Regarding Approval of Class Action Settlement and Class Certification does not appear to allow for such a filing, *see* Docket No. 42 ¶ 6, Plaintiff filed a reply brief in support of the fee/expense application on September 29, 2016 (one week before the scheduled hearing). *See* Docket No. 54. In it, Plaintiff argues – among other things – that all work performed on the case was related to the relief achieved by way of the settlement. But, again, due to the failure to submit fee records, Plaintiff has completely prevented the Fee Defendants from even attempting to isolate out work that should not be compensated in any award. In that reply, Plaintiff also argues that the *Mustard* action arose out of the same nucleus of facts. But Plaintiff cannot deny that *Mustard* was filed *before* the SEC filing that was allegedly so deficient that Plaintiff believes "excellent results" were achieved by way of the settlement because it led to further disclosures curing omissions in that filing. Moreover, Plaintiff's reply makes no attempt to explain why the Class Notice's limited advisement of who would be seeking attorney's fees is not of import on this particular aspect of the fee request. As such, even considering the reply brief, the Court sees little reason to award fees to counsel in *Mustard*.

9

expenses awarded would be paid to Plaintiff's counsel).

Beyond that point, the Court also agrees with the Fee Defendants that Plaintiff's showing on this motion is well-short of what is needed to demonstrate that the number of hours spent was reasonable. Plaintiff simply informed the Court of the total number of attorney hours spent on the case and the hourly rates implicated,[7] and provided a general description of the various tasks covered by that work. *See* Smith Decl. (Docket No. 47) ¶ 27; Smith Decl. (Docket No. 47-6) ¶ 5; *see also* Rowley Decl. (Docket No. 47-7) ¶¶ 3, 5. This is simply insufficient to permit any informed lodestar analysis, either by the Fee Defendants or by this Court. Plaintiff's attempt to cure that deficiency by way of submission of time records with the reply brief (discussed further *supra*, Footnote 6) is too late to permit the Fee Defendants any opportunity to address those materials *as part of the record on this motion* (as opposed to as part of a private submission to the Fee Defendants).

For the foregoing reasons, although some fee award is justified here, the Court is unable to enter any award on the current briefing (unless, potentially, Plaintiff is willing to accede to the limited award the Fee Defendants suggest is appropriate here).

**III. Conclusion**

For the reasons discussed herein, the Court will grant Motion 1, but is not prepared to grant Motion 2 on the present papers.

---

[7] The Fee Defendants do not appear to challenge the reasonableness of the rates charged, but the Court also notes that Plaintiff has not made any effort to demonstrate the reasonableness of those rates as compared to the relevant market (or even not tied to the relevant market, for that matter). *See Shirrod v. Dir., Office of Workers' Compensation Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015) ("[A]n attorney's hourly rate is to be calculated 'according to the prevailing market rates in the relevant community' and should be 'in line with [the rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'") (quoting *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1052 (9th Cir. 2009)).