UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-7818-GW(MRWx) | Date | November 10, 2016 |
| Title | *Jesse Sloan v. Rentech Nitrogen Partners, LP, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Evan Jason Smith                    Michael A. Firestein
                                    Kristin M. Murphy

**PROCEEDINGS:**     PLAINTIFF'S MOTION FOR ORDER GRANTING APPROVAL OF AWARD OF ATTORNEYS' FEES [45]


The Court's Tentative Ruling is circulated and attached hereto.  Court and counsel confer.  Based on the Tentative, and for reasons stated on the record, Plaintiff's Motion [45] is GRANTED.  The Court orders attorneys' fees in the amount of $147,000 and costs in the amount of $37,000 for a total of $184,000.

                                                                        :  06

                                                    Initials of Preparer   JG

<u>*Sloan v. Rentech Nitrogen Partners, LP, et al.*</u>, Case No. 2:15-cv-07818-GW (MRWx)
Tentative Ruling on Motion for Order Granting Approval of Award of Attorneys' Fees and Expenses

Following an initial hearing held on October 6, 2016, *see* Docket No. 58, the parties submitted further briefing on the application for $400,000 in attorneys' fees (including a 1.15 lodestar multiplier) and $37,021.56 in expenses in this class action that resulted in a settlement (that the Court finally-approved on October 6, 2016). Little has changed in the most-recent submission filed by plaintiff Jesse Sloan ("Plaintiff") and Plaintiff's counsel. They still seek the full amount of fees reflected in their initial filing, and still have not presented adequately-detailed billing records to enable the Court or their opponent to properly assess compensable fees under the line of authority the Court finds controlling.

Again, the Court does not disagree with Plaintiff regarding the appropriateness of some form of fee award here. *See, e.g.*, *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1137-39 (9th Cir. 1979) (explaining basis for fee award in cases establishing common, non-monetary, benefit). The lodestar method must be employed. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("The 'lodestar method' is appropriate in class actions where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation."). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). But "where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation – even those reasonably spent – may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'" *Id.* at 942 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *id.* at 944 ("Under the lodestar method, the district court must calculate the lodestar figure based on the number of hours *reasonably* expended on the litigation, adjusting the figure to account for the degree of success class counsel attained, along with other factors."); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 224 (9th Cir. 2013) ("Under both California and federal law, a fee award must be adjusted to reflect limited success.").

Out the outset, there is little apparent reason for the Court to change its initial view that fees should not be awarded to Levi & Korsinsky, plaintiffs' counsel in similar litigation that had been filed in Delaware Chancery Court (the "*Mustard* Action"), who never made an appearance in this case. For the reasons in the Tentative Ruling issued in connection with the October 6 hearing, *see* Docket No. 58, at pgs. 9-11 of 11,[1] the request for an award of those fees is rejected.

---

[1] In addition to those reasons, there is no apparent reason why Levi & Korsinsky could not have independently settled the *Mustard* Action in Delaware and sought fees and expenses for work performed in that case from the Delaware court overseeing the action. Alternatively, they could have included a specific provision in the settlement agreement filed in this action allowing for such a fee recovery and then informed the class in the Class Notice that fees would be sought in this action for work performed in the Mustard Action. Moreover, while Plaintiff and her counsel state that, "as is common in multi-district litigation, after discussion with [Plaintiff's counsel], Levi & Korsinsky agreed to defer to [this case] and assist [Plaintiff's counsel] in litigating [this case] in an effort to avoid duplicative litigation," Docket No. 61 at 10:21-24, this is not a multi-district litigation.

1

After rejecting fees and expenses claimed by Levi & Korsinsky, what is left over is the $232,516.25 proffered as the lodestar for just Plaintiff's counsel, and the $30,358.74 in expenses incurred by them. Plaintiff and Plaintiff's counsel have thrown all eggs in the basket which would see an award of full fees under *Hensley* if a plaintiff has achieved "excellent results." 461 U.S. at 435. But while the Court recognizes Plaintiff achieved *a* result – and one that was sufficient for the Court to approve the class settlement where there were no objections to it – it would not go so far as to characterize the result as an "excellent" one.

Yes, Plaintiff was able to force the Defendants into further disclosures which increased the information available to those unitholders deciding whether or not to approve the merger in question. But considering both the scope of what Plaintiff originally hoped to achieve[2] and the relatively-limited type of information Plaintiff was actually able to get Defendants to agree to provide, the Court does not believe that this result falls within the "excellent" category calling for an award of full fees under *Hensley*. *See Bluetooth Headset*, 654 F.3d at 945 n.8 ("We note, however, that the value of the injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury….").

Nor does the Court agree with Plaintiff that work related to getting Defendants to make these additional disclosures is necessarily "inextricably intertwined" with other work on the case Plaintiff brought, or that all of the claims arose from the same facts and circumstances,[3] such that it would be unreasonable to expect Plaintiff to be able to offer a more fine-grained view of counsel's work and how it related to "the results obtained," as *Bluetooth Headset* requires. As Defendants succinctly illuminate and argue in their Opposition brief, at its outset this case involved much more than allegations about a deficient Registration Statement. *See* Docket No. 64, at 7:16-8:22. Indeed, only a handful of substantive paragraphs in the Complaint – albeit paragraphs that span almost seven pages – deal with deficiencies in the Registration Statement. *See* Complaint ¶¶ 84-87. If the Court were to take, as proxy for what this litigation was designed to focus upon, eight substantive introductory paragraphs in the Complaint – paragraphs 2 through 9 – only one of them, paragraph 9, dealt with the Registration Statement. *See id.* ¶¶ 2-9.

Plaintiff's billing submissions do not aid in an attempt to discern which work was performed on claims relating to the arguably-deficient Registration Statement and which work was performed in connection with the many abandoned issues. Nor do they clearly identify the work performed – which the Court will not compensate – on the supplemental briefing required (due to deficiencies in Plaintiff's original briefing) at the preliminary approval stage.[4] As such,

---

[2] The Court's ruling on Plaintiff's motion for preliminary approval of the settlement set forth Plaintiff's explanation for why much of the case – at least as it was described in the Complaint – was jettisoned in favor of the limited relief achieved by way of the settlement. *See* Docket No. 41, at pgs. 2-3 of 5.

[3] As Defendants point out, for the Court to reach that conclusion it would have to determine that the "same facts and circumstances" refers simply to the merger in general. But, as Plaintiff's pleadings themselves make clear, there were many separate aspects of the merger that were at issue in this case given Plaintiff's allegations. Looking to the merger in general for the "facts and circumstances" is too broad of a brush. Simply because the Rule 23 analysis may have demonstrated that the case was suitable for certification does not remotely suggest that all of the claims arose out of the same facts and circumstances for purposes of a fee analysis.

[4] If the Court were to simply eliminate all work performed between the initial preliminary approval hearing and the second hearing set to address the supplemental briefing (and travel to and attendance at that second preliminary

they all but prevent the Court from attempting the type of analysis the Ninth Circuit called for in *Muniz* (though the Court does conclude – as *Muniz* also requires – that Plaintiff's unsuccessful/abandoned claims would have been "suitable for entirely separate lawsuits" and were "distinct in both fact and law," *Muniz*, 738 F.3d at 224). In *Muniz*, the Ninth Circuit indicated that a "limited success determination has two components: first, the court must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." *Id.* Plaintiff and Plaintiff's counsel have made it so that the Court cannot complete the first "component," which precludes even an attempt of the second. Thus, Plaintiff's submission has left the Court in an almost impossible position with respect to meaningfully being able to parse the bills in order to issue an appropriate award.

Equally true, because of Plaintiff's deficient showing the Court is unable to perform what is required of it in "find[ing] that the time deducted did not aid in proving the successful claims." *Id.* Litigants may not prevent a court from performing its obligation and then hope to benefit from that tactic. As such, the Court assumes that time Plaintiff spent on unsuccessful claims and theories did not "aid in proving" the successful claims.

Stepping into that vacuum, Defendants suggest – as before – that the Court award Plaintiff no more than $100,000 in fees and $13,054.26 in costs. *See* Docket No. 58, at pg. 9-10 n.5 of 11 (explaining Defendants' rationale for those figures). In reality, Plaintiff has given the Court no other real alternative than employing an estimate.

The Court will not go so far as to employ the 43% figure Defendants advocate, but will instead set the lodestar figure at compensation for 70% of the hours reported – $162,761.38.[5] *See Yamada*, 825 F.3d at 546-47 (approving of district court's reduction of lodestar by 20% because of class counsel's success on only one of five claims and determination that the plaintiff's various claims were "different theories in pursuit of the same objective"). Given the original scope of the case, the Court believes that this figure likely overcompensates Plaintiff's counsel under the *Bluetooth Headset* standard. Certainly *more* than half of the case, as reflected by the Complaint,[6] had no connection to any (arguable, but not admitted) deficiency in the Registration Statement. Assuming that is not true, however, Plaintiff and Plaintiff's counsel have no one but themselves to blame for insufficiently-clear fee documentation. Concluding that the appropriate lodestar should nevertheless be 70% of the hours/fees reported and requested,

---

approval hearing), it would result in a deduction of 49.75 hours (33.25 for Evan Smith, 9.25 for Marc Ackerman, and 7.25 for Jordan Schatz), representing $35,318.75 in fees. The Court could then employ a percentage deduction to the remaining hours/fees, as recommended further herein.

[5] In *Muniz*, the Ninth Circuit characterized its earlier decision in *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991), as having "criticized percentage adjustments to the lodestar amount for limited success, concluding that limited success should be addressed in the lodestar calculation by deducting specific hours" (before also commenting that "*Corder* finds such a deduction harmless error unless the district court double counts"). *Muniz*, 738 F.3d at 225. But, again, Plaintiff's submission precludes the Court from accomplishing this preferred method of adjustment. This Court believes that it is Plaintiff and Plaintiff's counsel who should suffer the consequences of such a failure.

[6] There was no substantive motion practice in this case, so there was no occasion for the Court to meaningfully assess whether some portion – large or small – of the case had gone by the wayside sufficiently early on in the case so as to make it obvious that, in fact, fees incurred in the case had to have been incurred in connection with obtaining a remedy associated with curing the Registration Statement.

however, reflects an attempt to give Plaintiff and Plaintiff's counsel *some* benefit of the doubt that a substantial amount of the work performed was in connection with the Registration Statement issue or some other issue in the case that was sufficiently "intertwined" therewith.

Because the Court has had to resort to an estimate in order to reach a "lodestar" figure here, it is not inclined to issue a lodestar multiplier. For one thing, the lodestar figure the Court has arrived at may already reflect a larger fee figure than what Plaintiff's counsel would be entitled to had they submitted billing records that were sufficient for the task at hand.[7] Along those same lines, if the Court were actually able to discern whether the hours spent on Plaintiff's successful claims were reasonable, the Court might very well have determined that the rates charged by the attorneys were *not* reasonable. Though Defendants (represented, of course, by attorneys) do not contest those rates, the information Plaintiff has provided on this point reflects requested hourly rates – Plaintiff's counsel employed three partners in this matter, each at a rate of $750 per hour, and one associate at $475 per hour – that are well above the median hourly rates for the geographic areas in question. *See* Docket No. 61, at 17 n.13; Smith Decl. (Docket No. 62) ¶¶ 4, 10.

Beyond even those considerations, the Court does not believe that "the time and labor required," "the novelty and difficulty of the questions involved," "the customary fee," "the amount at controversy and the results obtained," "the experience, reputation, and ability of the attorneys," "the 'undesirability' of the case," or "the nature and length of the professional relationship with the client" support a multiplier here. *See Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1995). To the extent any of the other traditional "*Kerr* factors" do counsel in favor of a multiplier, they do not do so sufficiently so as to outweigh the Court's consideration of these specific factors.

In sum, the Court sees two options here. It can entirely eliminate all work performed in connection with the supplemental briefing Plaintiff needed in order to obtain preliminary approval and then compensate the remaining fees at 70% of what Plaintiff and Plaintiff's counsel have requested. *See* Footnote 4, *infra*. Or it can simply employ a 70% figure across the board, for all work Plaintiff's counsel has performed. Under either scenario, under review of the expenses incurred, the Court would award all expenses, including the total amount paid to Plaintiff's expert (by both Plaintiff's counsel and Levi & Korsinsky) – $37,021.56. *See* Smith Supp. Decl. (Docket No. 62) ¶¶ 5, 11; Smith Second Supp. Decl. (Docket No. 65) ¶¶ 3, 5.[8]

---

[7] While it is equally possible that the lodestar figure is lower than what might otherwise have been calculated, that is the down-side risk that Plaintiff and Plaintiff's counsel run when they fail to give the Court sufficient evidentiary material to allow it to do what is required once the Court has determined there is no "excellent result" under *Hensley* and the claims are not "inextricably intertwined."

[8] The only potential reason to quibble with the claimed expenses is the somewhat-strangely exorbitant cost of $3,442.91 attributed to "Flight, Hotel, taxis, meals" for roundtrip travel between Philadelphia and Los Angeles from November 17, 2015 to November 19, 2015. *See* Smith Supp. Decl. (Docket No. 62) ¶ 5; Smith Second Supp. Decl. (Docket No. 65) ¶ 5. A trip of similar length from June 15, 2016 to June 17, 2016 incurred only a cost of $2,082.99. *See* Smith Supp. Decl. (Docket No. 62) ¶ 5; Smith Second Supp. Decl. (Docket No. 65) ¶ 5. The Court would inquire at the hearing as to the reason for the fairly significant difference.